[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 513.]

THE STATE OF OHIO, APPELLANT, *v.* WILLIAMS, APPELLEE.

THE STATE OF OHIO, APPELLANT, *v.* WORTHY, APPELLEE.

THE STATE OF OHIO, APPELLEE, *v.* SUFFECOOL, APPELLANT.

[Cite as *State v. Williams*, 2000-Ohio-428.]

*Criminal procedure—Sex offender registration—R.C. Chapter 2950 does not violate constitutional rights guaranteed by the Double Jeopardy, Bill of Attainder, and Equal Protection Clauses of the United States and Ohio Constitutions—R.C. Chapter 2950 does not violate rights enumerated in Section 1, Article I of the Ohio Constitution.*

(Nos. 99-286, 99-764 and 99-765—Submitted January 12, 2000—Decided April 28, 2000.)

APPEAL from the Court of Appeals for Lake County, No. 97-L-191.

APPEAL from the Court of Appeals for Portage County, No. 97-P-0059.

APPEAL from the Court of Appeals for Stark County, No. 1998-CA-00101.

———————————

I. Case No. 99-286: Appellee Daniel Williams.

{¶ 1} In May 1986, appellee Daniel Williams pleaded guilty to one count of rape in violation of R.C. 2907.02 and one count of aggravated burglary in violation of R.C. 2911.11. Williams was then sentenced to an indefinite term of seven to twenty-five years on each count, to be served concurrently. In March 1997, pursuant to R.C. Chapter 2950, authorities at the London Correctional Institution recommended a sex offender classification hearing for Williams, and that he be classified as a "sexual predator," which would subject Williams to the registration and notification provisions of R.C. Chapter 2950.

{¶ 2} In April 1997, prior to his sex offender classification hearing and prior to his release from prison, Williams filed a motion to dismiss, alleging that R.C.

Chapter 2950 is unconstitutional as applied to him. In its opinion, the trial court held that R.C. Chapter 2950 violates the *Ex Post Facto* Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution with regard to any sexual offender who was sentenced prior to January 1, 1997, the effective date of R.C. Chapter 2950. The state appealed.

{¶ 3} In September 1998, prior to the decision of the Eleventh District Court of Appeals, this court issued its opinion in *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, in which we held that R.C. Chapter 2950 is not a violation of either the *Ex Post Facto* Clause of the United States Constitution or the Retroactivity Clause of the Ohio Constitution. The court of appeals affirmed the trial court's judgment on the grounds that R.C. Chapter 2950 violates Section 1, Article I of the Ohio Constitution.

II. Case No. 99-764: Appellee Donald Worthy.

{¶ 4} In March 1995, appellee Donald Worthy pleaded guilty to two counts of rape in violation of R.C. 2907.02, and one count of gross sexual imposition in violation of R.C. 2907.05. The counts to which Worthy pleaded guilty involved child victims who were all under the age of thirteen. Worthy was sentenced to an indefinite term of ten to twenty-five years on each count of rape, and one year on the gross sexual imposition count, with all sentences running concurrently.

{¶ 5} In April 1997, the Ohio Department of Rehabilitation and Correction recommended that Worthy be adjudicated a "sexual predator" pursuant to R.C. Chapter 2950. Prior to his sex offender classification hearing and his release from prison, Worthy filed a motion to dismiss the recommendation that he be declared a "sexual predator." The trial court granted the motion to dismiss, holding that R.C. Chapter 2950 violates the *Ex Post Facto* Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution. The state filed a timely appeal. The court of appeals, relying on *State v. Williams* (Jan. 29, 1999), Lake

App. No. 97-L-191, unreported, 1999 WL 76633, affirmed the judgment of the trial court.

### III.  Case No. 99-765: Appellant Paul D. Suffecool.

{¶ 6} In January 1983, appellant Paul D. Suffecool pleaded guilty to one count of statutory rape in violation of R.C. 2907.02, for raping a child under the age of thirteen.  The trial court sentenced Suffecool to an indeterminate term of incarceration of seven to twenty-five years.  Suffecool also had prior convictions for the rape of a nineteen-year-old girl, and for the kidnapping of two teenagers.

{¶ 7} In March 1998, prior to Suffecool's release from prison, a sex offender classification hearing was conducted pursuant to R.C. Chapter 2950.  At the hearing, the state introduced evidence relating to Suffecool's convictions, a psychiatric evaluation, and statements made to police in which Suffecool admitted to having uncontrollable sexual urges for young girls.  Defense counsel introduced evidence that Suffecool had participated in numerous counseling programs while in prison.  The trial court adjudicated Suffecool as a "sexual predator."

{¶ 8} Suffecool appealed his sexual predator classification to the Fifth District Court of Appeals.  Suffecool argued that R.C. Chapter 2950, *inter alia*, violates the Double Jeopardy Clause of the United States and Ohio Constitutions, and that R.C. Chapter 2950 is unconstitutionally vague.  The court of appeals held that R.C. Chapter 2950 is constitutional and affirmed the trial court's decision.

{¶ 9} These cases are now before this court pursuant to the allowance of discretionary appeals.

_____

*Charles E. Coulson*, Lake County Prosecuting Attorney, *Vincent A. Culotta* and *Julie Mitrovich King*, Assistant Prosecuting Attorneys, for appellant in case No. 99-286.

*R. Paul LaPlante*, Lake County Public Defender, and *Vanessa MacKnight*, Assistant Public Defender, for appellee in case No. 99-286.

*Victor V. Vigluicci*, Portage County Prosecuting Attorney, and *Kelli K. Norman*, Assistant Prosecuting Attorney, for appellant in case No. 99-764.

*Morganstern, MacAdams & DeVito Co., L.P.A.,* and *Michael A. Partlow*, for appellee in case No. 99-764.

*Robert D. Horowitz*, Stark County Prosecuting Attorney, and *Ronald Mark Caldwell*, Chief Appellate Prosecuting Attorney; and *Frederic R. Scott*, for appellee in case No. 99-765.

*David H. Bodiker*, Ohio Public Defender, and *Robert L. Lane*, Chief Appellate Public Defender, for appellant in case No. 99-765.

*Betty D. Montgomery*, Attorney General, *Edward B. Foley*, *pro hac vice*, State Solicitor, *David M. Gormley* and *Stephen P. Carney*, Associate Solicitors, urging reversal for *amicus curiae*, Attorney General of Ohio in case Nos. 99-286 and 99-764, and urging affirmance in case No. 99-765.

*William D. Mason*, Cuyahoga County Prosecuting Attorney, and *Renee L. Snow*, Assistant Prosecuting Attorney, urging reversal for *amicus curiae*, Cuyahoga County Prosecutor's Office in case No. 99-286.

*Dennis Watkins*, Trumbull County Prosecuting Attorney, *David P. Joyce*, Geauga County Prosecuting Attorney, *Thomas L. Sartini*, Ashtabula County Prosecuting Attorney, and *Victor V. Vigluicci*, Portage County Prosecuting Attorney, urging reversal for *amicus curiae,* the Prosecuting Attorneys of the Eleventh Ohio Appellate District in case No. 99-286.

*Michael K. Allen*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, urging reversal for *amicus curiae*, Ohio Prosecuting Attorneys' Association in case Nos. 99-286 and 99-764.

*Gray & Duning* and *Donald E. Oda II*, urging affirmance for *amicus curiae*, Ohio Association of Criminal Defense Lawyers in case No. 99-286.

————————————

**MOYER, C.J.**

{¶ 10} In 1996, in an effort to protect the public, the General Assembly repealed and reenacted Ohio's sex offender registration statute. See Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560 ("H.B. 180"). The General Assembly concluded that "[s]exual predators and habitual sex offenders pose a high risk of engaging in further offenses even after being released from imprisonment." R.C. 2950.02(A)(2). H.B. 180 created more stringent sex offender classification, registration, and notification provisions within R.C. Chapter 2950.

{¶ 11} We have previously disposed of two challenges to the constitutionality of revised R.C. Chapter 2950. In *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, certiorari denied (1999), 525 U.S. 1182, 119 S.Ct. 1122, 143 L.Ed.2d 116, we held that R.C. 2950.09(B) is not a retroactive law in violation of Section 28, Article II of the Ohio Constitution, and that R.C. Chapter 2950 is not an *ex post facto* law in violation of Section 10, Article I of the United States Constitution as applied to conduct occurring prior to the effective date of H.B. 180.

{¶ 12} Today we are asked to determine whether R.C. Chapter 2950 violates constitutional rights guaranteed by the Double Jeopardy, Bill of Attainder, and Equal Protection Clauses of the United States and Ohio Constitutions, and whether R.C. Chapter 2950 violates rights enumerated in Section 1, Article I of the Ohio Constitution. For the following reasons, we hold that R.C. Chapter 2950 is constitutional.

I. History and Overview of Sex Offender Registration Laws.

A. Origins of Current Sex Offender Registration Laws.

{¶ 13} Although sex offender registration statutes have been in effect for many years, see, *e.g*., former R.C. Chapter 2950, 130 Ohio Laws 669, it was not until 1994 that sex offender laws were updated to the form that now exists. On July 29, 1994, a seven-year-old New Jersey girl, Megan Kanka, was raped and murdered after a convicted sex offender moved into the house across the street from Megan, and lured her into his house by promising Megan that she could see his new puppy.

See Weston, Megan's Law Familiarity Complicates Jury Selection (Jan. 13, 1997), N.N.J. Record at A4. In response to this horrible crime and what was deemed by the New Jersey legislature as a legislative emergency, New Jersey enacted "Megan's Law," a sex offender registration statute that includes a public notification provision. N.J. Stat.Ann. 2C:7-1 *et seq.*; see, also, Zolper, State Again Tightens Megan's Law Notification—Heeds Court Order to Protect Sex Offenders' Privacy Rights (Mar. 24, 2000), N.N.J. Record at A3.

{¶ 14} After the enactment of Megan's Law, Congress in 1994 passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Section 14071, Title 42, U.S.Code ("Jacob Wetterling Act"). Under the Jacob Wetterling Act, Congress recognized two classes of sex offenders, "predators" and those convicted of a sexually violent offense or a crime against a minor. Sections 14071(a)(3)(A) through (C), Title 42, U.S.Code. The Jacob Wetterling Act also mandates that the states either adopt sex offender registration laws, or lose funding under the Public Health and Welfare Code. Sections 14071(g)(1) and (2), Title 42, U.S.Code. The Act further authorizes the release of information collected under state registration programs to law enforcement agencies where the sex offender resides, and requires immediate transmission of information to the Federal Bureau of Investigation. Section 14071(b)(2), Title 42, U.S.Code.

{¶ 15} In its original version, the Jacob Wetterling Act permitted, but did not require, state agencies to notify appropriate communities about sex offenders. Former Section 14071(d)(3), Title 42, U.S.Code. In 1996, however, Congress amended the Act to require community notification when a registered sex offender moved into the neighborhood. Former Section 14071(d)(2) (now Section 14071[e][2], Title 42, U.S.Code). Since enactment of the Jacob Wetterling Act, all fifty states have passed some form of sex offender registration law. See *People v.*

6

*Ross* (1996), 169 Misc.2d 308, 309, 646 N.Y.S.2d 249, 250, fn. 1 (listing sex offender registration laws enacted in all fifty states).

B.  Sex Offender Registration Laws in Other States.

**{¶ 16}** Although all fifty states have enacted a sex offender registration law, the laws vary significantly in what sex offenses are covered, registration and notification procedures, and the process of assessment used to determine sex offender status.  See Note, Who are the People in Your Neighborhood? Due Process, Public Protection, and Sex Offender Notification Laws (1999), 74 N.Y.U.L.Rev. 1451, 1459-1460.  In addition to the common registration and notification provisions, some states such as California and Texas are considering more extreme methods of addressing repeat sex offenders.  *Id.* at 1460, fn. 42.

**{¶ 17}** The major differences among sex offender registration laws are found in the registration and notification provisions.  For instance, the laws differ with regard to retroactive application.  Fifteen states and the District of Columbia have adopted laws that are fully retroactive, applying to all sex offenders regardless of the date of their offense.  See Note, "Megan's Laws" Reinforcing Old Patterns of Anti-Gay Police Harassment (1999), 87 Geo.L.J. 2431, 2467-2473.  Twenty-nine states have partially retroactive laws that, generally, apply to all sex offenders under some form of criminal supervision on the effective date of the particular statute.  *Id.*  The remaining states apply sex offender registration laws to sex offenses committed on or after the effective date of their statute.  *Id.*

**{¶ 18}** The scope of community notification also varies among the states.  Several states have no community notification provisions.  *Id.*  Other states will release information only upon request, when the information concerns high-risk offenders, or when dissemination of information is necessary for public protection.  *Id.*  In addition, the Internet is being used more frequently for the dissemination of sex offender data.  According to a United States Department of Justice report, over half of the states have, or are planning to develop, an Internet site for public access

to sex offender registries. See United States Department of Justice, Bureau of Justice Statistics Fact Sheet, Summary of State Sex Offender Registry Dissemination Procedures (August 1999), at 1.

C. R.C. Chapter 2950.

{¶ 19} Ohio first enacted a sex offender registration statute in 1963. See former R.C. Chapter 2950, 130 Ohio Laws 669. In 1996, the General Assembly revised R.C. Chapter 2950 as part of H.B. 180. The classification provisions in R.C. 2950.09 became effective on January 1, 1997, and the registration and notification requirements contained in R.C. 2950.04, 2950.05, 2950.06, 2950.10, and 2950.11 became effective July 1, 1997. Although we provided a comprehensive review of R.C. Chapter 2950 in *State v. Cook*, 83 Ohio St.3d at 406-409, 700 N.E.2d at 574-576, we find it necessary to discuss the requirements contained in R.C. Chapter 2950 in the context of the constitutional challenges presented in these appeals.

{¶ 20} In revising R.C. Chapter 2950, it was the stated intent of the General Assembly to "protect the safety and general welfare of the people of this state." R.C. 2950.02(B). In the opinion of the General Assembly, the classification, registration, and notification requirements in H.B. 180 are a "means of assuring public protection." *Id.* To support its conclusion that the provisions of H.B. 180 were necessary, the General Assembly advanced several findings.

{¶ 21} The General Assembly found that if the public is provided notice and information about sexual predators, habitual sex offenders, and other individuals convicted of sexually oriented offenses as defined in R.C. 2950.01, the citizens can inform and prepare themselves and their children for the release from confinement of a sex offender. R.C. 2950.02(A)(1). Dissemination of information is deemed to be justified because sexual predators and habitual sex offenders pose a high risk of recidivism, and protection of the public from these types of sex offenders is of "paramount governmental interest." R.C. 2950.02(A)(2). The General Assembly

further concluded that a "person who is found to be a sexual predator or a habitual sex offender has a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government." R.C. 2950.02(A)(5).

{¶ 22} Revised R.C. Chapter 2950 is separated into three sets of provisions. The first, which took effect on January 1, 1997, established a new classification system for convicted sex offenders. Under R.C. 2950.09, a sentencing court must determine whether a sex offender is a habitual sex offender, a sexual predator, or a sexually oriented offender.

{¶ 23} As defined, a "habitual sex offender" is a person who has been "convicted of or pleads guilty to a sexually oriented offense and who previously has been convicted of or pleaded guilty to one or more sexually oriented offenses." R.C. 2950.01(B). A "sexual predator" is "person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). A sexually oriented offender is a person who has committed a "sexually oriented offense" as defined in R.C. 2950.01(D), and does not meet the definition of either a habitual sex offender or sexual predator.

{¶ 24} There are two ways in which a sex offender may be classified as a sexual predator. First, if a person is convicted of or has pleaded guilty to a sexually violent offense on or after January 1, 1997, and also is convicted of or has pleaded guilty to a sexually violent predator specification alleged in the indictment, count in the indictment, or information charging the sexually violent offense, the sex offender is automatically classified as a sexual predator. R.C. 2950.09(A). Otherwise, the sexual predator classification will attach only after a court holds a sex offender classification hearing in which the offender is entitled to representation by counsel, to testify on his/her own behalf, and to call and cross-examine witnesses. R.C. 2950.09(B)(1) and (C)(2).

**{¶ 25}** In determining whether a sex offender is a sexual predator, a judge shall consider all relevant factors to determine whether the individual is likely to engage in future sex offenses. See R.C. 2950.09(B)(2). These factors include, but are not limited to, the offender's age and prior criminal record, the age of the victim, whether the sex offense involves multiple victims, whether the offender used drugs or alcohol to impair the victim of the sex offense, whether the offender completed a sentence for any conviction, whether the offender participated in any available program for sex offenders, any mental disease or disability of the offender whether the offender engaged in a pattern of abuse or displayed cruelty toward the victim, and any other behavioral characteristics that contribute to the sex offender's conduct. R.C. 2950.09(B)(2)(a) through (j).

**{¶ 26}** The court shall make the determination that a sex offender is a sexual predator only if its conclusion is supported by clear and convincing evidence. R.C. 2950.09(B)(3). The sex offender and the prosecutor may appeal the court's determination of whether the offender is a sexual predator. *Id.* An offender who has been adjudicated a sexual predator may also petition the trial court, after the expiration of an applicable period of time, to obtain an entry indicating that the offender is no longer a sexual predator. R.C. 2950.09(D). Pursuant to R.C. 2950.09(D), the court shall not enter an order with regard to a petition unless the court determines by clear and convincing evidence that the offender is no longer likely to commit further sex offenses.

**{¶ 27}** The second set of provisions in R.C. Chapter 2950 is the registration and address verification provisions. The registration provision, R.C. 2950.04, applies to all three classifications of sex offenders and became effective on July 1, 1997. The registration requirements apply to offenders who are sentenced on or after the effective date regardless of when the offense occurred, and to habitual sex offenders required to register immediately prior to the effective date. R.C. 2950.04(A)(1) through (4). Any person required to register must do so with the

county sheriff within seven days of entering a county in which the offender will be domiciled or temporarily reside for more than seven days. *Id.* The offender must provide a current home address, the name and address of the offender's employer, a photograph, and any other information required by the Federal Bureau of Investigation. R.C. 2950.04(A) and (C). Persons adjudicated as sexual predators must also provide the license plate number of all motor vehicles either owned by the offender or registered in the offender's name. R.C. 2950.04(C)(2).

{¶ 28} Pursuant to R.C. Chapter 2950, sex offenders must also periodically verify their current home address. Sexually oriented offenders must verify their address with the sheriff in the county where they reside or are temporarily domiciled annually for ten years. R.C. 2950.06(B)(2) and 2950.07(B)(3). Habitual sex offenders must verify their addresses annually for twenty years. R.C. 2950.06(B)(2) and 2950.07(B)(2). Sexual predators must register and verify their addresses every ninety days for life or until the offender is no longer classified as a sexual predator. R.C. 2950.06(B)(1) and 2950.07(B)(1). Failure to adhere to the registration and verification provisions will result in criminal penalties. R.C. 2950.06(G)(1) and 2950.99.

{¶ 29} The last set of provisions in R.C. Chapter 2950 addresses community notification procedures. The community notification provisions apply to all individuals who have been adjudicated sexual predators. R.C. 2905.10(A). The community notification provisions also apply to individuals determined to be habitual sex offenders upon whom the court has imposed the notification requirements. R.C. 2950.10(A) and 2950.11(F).

{¶ 30} Once the offender registers, the sheriff must notify certain law enforcement officials, adjacent neighbors, and other neighbors designated by the Attorney General, within seventy-two hours of the registration. R.C. 2950.11(D)(1). Executive directors of the public services agency, superintendents of the board of education, appointing or hiring officers of each chartered non-public

school, preschool programs, child day-care centers, and institutions of higher learning within the specified notification area must receive notice from the sheriff with whom the offender registered within seven days of registration. R.C. 2950.11(D)(2). Additionally, certain victims are to be notified when specified offenders change their address if the victim makes a request to be notified. R.C. 2950.10(A)(2). The notice shall include the offender's name, address, the sexually oriented offense to which the offender pleaded guilty or of which the offender was convicted, and a statement that the offender has been adjudicated a sexual predator or a habitual sex offender. R.C. 2950.11(B)(1) through (4).

## II. Constitutionality of R.C. Chapter 2950.

{¶ 31} As an initial matter, it must be noted that statutes enacted in Ohio are presumed to be constitutional. See *State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas* (1967), 9 Ohio St.2d 159, 161-162, 38 O.O.2d 404, 405-406, 224 N.E.2d 906, 908-909. This presumption of constitutionality remains unless it is proven beyond a reasonable doubt that the legislation is clearly unconstitutional. See *Roosevelt Properties Co. v. Kinney* (1984), 12 Ohio St.3d 7, 13, 12 OBR 6, 11, 465 N.E.2d 421, 427. Therefore, we begin with the presumption that R.C. Chapter 2950 is constitutional.

### A. Section 1, Article I of the Ohio Constitution.

{¶ 32} The courts of appeals in *Williams* and *Worthy* held that R.C. Chapter 2950 is an unconstitutional law in violation of Section 1, Article I of the Ohio Constitution. The decisions derive from the conclusion that R.C. Chapter 2950 impinges upon the natural law rights of privacy, favorable reputation, the acquisition of property, and the ability to pursue an occupation. See, *e.g.*, *State v. Williams* (Jan. 29, 1999), Lake App. No. 97-L-191, unreported, 1999 WL 76633. We first address whether Section 1, Article I of the Ohio Constitution is a self-executing provision that provides such protection, or whether reliance upon this constitutional provision without other enabling legislation is misplaced.

{¶ 33} Section 1, Article I of the Ohio Constitution provides that "[a]ll men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety." The language of Section 1, Article I is a broad statement limiting the power of our state government to interfere with certain rights of individuals. The question posited is whether the words of Section 1, Article I are so broad as to be aspirational ideals that require enabling legislation to be practically applied, or whether the language is sufficiently definite to make Section 1, Article I self-executing.

{¶ 34} A constitutional provision is self-executing when it is complete in itself and becomes operative without the aid of supplemental or enabling legislation. *In re Protest Filed by Citizens for the Merit Selection of Judges, Inc.* (1990), 49 Ohio St.3d 102, 104, 551 N.E.2d 150, 152. Likewise, a constitutional provision is not self-executing if its language, duly construed, cannot provide for adequate and meaningful enforcement of its terms without other legislative enactment. *State ex rel. Russell v. Bliss* (1951), 156 Ohio St. 147, 151-152, 46 O.O. 3, 5, 101 N.E.2d 289, 291. Stated more succinctly, the words of a constitutional provision must be sufficiently precise in order to provide clear guidance to courts with respect to their application if the provision is to be deemed self-executing.

{¶ 35} The constitutions of other states reflect Section 1, Article I of the Ohio Constitution. We consider the judicial interpretations of those states in the absence of Ohio precedent. See *State ex rel. Durbin v. Smith* (1921), 102 Ohio St. 591, 599, 133 N.E. 457, 459.

{¶ 36} The Vermont Constitution provides that "all persons are born equally free and independent, and have certain natural, inherent, and unalienable rights, amongst which are the enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining happiness and safety." Chapter 1, Article I, Vermont Constitution. The Supreme Court of

Vermont has held that this provision does not create enforceable rights and is not self-executing, but rather "expresses fundamental, general principles * * * that infuse the rights of individuals and powers of government specified elsewhere in the constitution." *Shields v. Gerhart* (1995), 163 Vt. 219, 224, 658 A.2d 924, 928. The court has never declared an Act of the Vermont legislature unconstitutional solely because it violated Chapter 1, Article I of the Vermont Constitution. See *Benning v. State* (1994), 161 Vt. 472, 476-477, 641 A.2d 757, 759.

{¶ 37} Section 4, Article II of the New Mexico Constitution states that "[a]ll persons are born equally free, and have certain natural, inherent and inalienable rights, among which are the rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness." The New Mexico courts have held that although its citizens enjoy rights to life, liberty, property, and happiness, the vague references in Section 4, Article II are insufficient without enabling legislation to warrant judicial enforcement. See *Blea v. Espanola* (App.1994), 117 N.M. 217, 221, 870 P.2d 755, 759, certiorari denied (1994), 117 N.M. 328, 871 P.2d 984.

{¶ 38} In language virtually identical to that of the Ohio Constitution, the California Constitution provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Section 1, Article I, California Constitution. The California courts have held that these rights are not absolute in the individual and will yield when the public welfare and common good so demand. See *Natl. Org. for Reform of Marijuana Laws v. Gain* (1979), 100 Cal.App.3d 586, 598, 161 Cal.Rptr. 181, 187; *Ex Parte Moffett* (1937), 19 Cal.App.2d 7, 14, 64 P.2d 1190, 1194.

{¶ 39} In addition to Vermont, New Mexico, and California, numerous other states with constitutional provisions similar to Section 1, Article I have not

construed their provisions to be a sole basis for challenging legislation.[1]  The reason for such a construction is that the language contained in these states' constitutional provisions is not sufficiently complete so that courts would have a standard that could be routinely and uniformly applied.  Cf., *e.g.*, *Sepe v. Daneker* (1949), 76 R.I. 160, 168, 68 A.2d 101, 105.  Against this backdrop, we now analyze Section 1, Article I of the Ohio Constitution to determine whether its language is self-executing.

{¶ 40} Section 1, Article I of the Ohio Constitution describes rights inherent in the individual to be free and happy—rights that the government is to hold inalienable.  Yet, we have never held rights of property or rights of liberty to be completely free from government restraint.  Accordingly, the "natural law" rights outlined in Section 1, Article I will, at times, yield to government intrusion when necessitated by the public good.  The issue we must decide is whether this language gives us a methodology to determine how to accord protection to these rights.

{¶ 41} "Natural law" rights, in and of themselves, are of no legal force.  Rather, it is the laws enacted by legislatures that define the rights of the individual.  As noted by the United States Supreme Court, if "the Legislature of the Union, or the Legislature of any member of the Union, shall pass a law, within the general scope of their constitutional power, the Court cannot pronounce it to be void, merely because it is, in their judgment, contrary to the principles of natural justice. The ideas of natural justice are regulated by no fixed standard."  *Calder v. Bull* (1798), 3 U.S. (3 Dall.) 386, 399, 1 L.Ed. 648, 654 (Iredell, J., concurring).  In order for a court of law to enforce any right, there must be a fixed standard to ensure equal and uniform application.  *Id.*

---

1. See, *e.g.*, *Sheppard v. Dowling* (1900), 127 Ala. 1, 11-12, 28 So. 791, 795; *Cogan v. State Dept. of Revenue* (Alaska 1983), 657 P.2d 396, 398; *Nelson v. Boundary Cty.* (App.1985), 109 Idaho 205, 211, 706 P.2d 94, 100; *Atteberry v. State* (1968), 84 Nev. 213, 218, 438 P.2d 789, 791; *Ferraro v. Long Branch* (1998), 314 N.J.Super. 268, 286, 714 A.2d 945, 954, disposition denied (1998), 157 N.J. 541, 724 A.2d 801; *Sepe v. Daneker*  (1949), 76 R.I. 160, 168, 68 A.2d 101, 105.

{¶ 42} The language in Section 1, Article I of the Ohio Constitution, in many ways, mirrors the precatory words of the Declaration of Independence ("We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness") and in the state constitutions previously mentioned. Similar to the language in the Declaration of Independence and other state constitutions, the language in Section 1, Article I of the Ohio Constitution is not an independent source of self-executing protections. Rather, it is a statement of fundamental ideals upon which a limited government is created. But it requires other provisions of the Ohio Constitution or legislative definition to give it practical effect. This is so because its language lacks the completeness required to offer meaningful guidance for judicial enforcement.

{¶ 43} This lack of completeness can best be demonstrated by comparing Section 1, Article I to other provisions of the Ohio Constitution. For example, Section 2, Article I provides that "no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly." Likewise, Section 14, Article I states that the "no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized." The shared characteristic of these two provisions is that they provide express limitations on government (no special privileges or immunities, no warrants shall issue), accompanied by a standard through which the courts can enforce the limitation (that may not be revoked, but upon probable cause). It is the absence of a precise standard subject to judicial enforcement that precludes Section 1, Article I from being a self-executing provision. See *In re Protest*, 49 Ohio St.3d at 104, 551 N.E.2d at 152.

{¶ 44} Section 1, Article I declares that all men are "free and independent," and that the rights of life, liberty, property, and happiness are inalienable. This constitutional provision, however, does not indicate how these rights are subject to

16

judicial enforcement. All of the aforementioned guarantees are not inalienable in the most strict sense of the term. It is beyond doubt that the rights of property can be infringed upon through, for example, the power of eminent domain. See, *e.g.*, Section 19, Article I, Ohio Constitution. Both life and liberty are subject to the criminal laws of this state. Happiness is such a broad concept that no court could ever adequately protect every individual's happiness without transgressing the happiness of another. We find the standards for judicial enforcement of these rights not in Section 1, Article I, but in other provisions of the Ohio Constitution, laws passed by the General Assembly, and in the mandates of the United States Constitution.

**{¶ 45}** Even if, however, Section 1, Article I was self-executing, the General Assembly has not violated its declaration. The court of appeals in *Williams* held that R.C. Chapter 2950 infringes upon the right of privacy, the right to acquire property, the right to pursue an occupation, and the right to a favorable reputation. When we examine the precedent of both this court and the United States Supreme Court with regard to rights of privacy, we find that the courts of appeals were incorrect.

**{¶ 46}** In reviewing legislation that impacts the rights guaranteed by Section 1, Article I, the legislation will be upheld if it bears a real and substantial relation to the public health, safety, morals, or general welfare, and if the legislation is not arbitrary or unreasonable. See *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 110, 4 O.O.2d 113, 117, 146 N.E.2d 854, 860. Questions of reasonableness within the meaning of Section 1, Article I "are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them." (Citations omitted.) *Id.* The question we must answer, then, is whether R.C. Chapter 2950, which is an exercise

of the police power, is clearly unreasonable legislation that does not promote the welfare and safety of the people of this state.

{¶ 47} We have suggested the answer to the question in *State v. Cook*, where we compared R.C. Chapter 2950 to a Kansas statute that was upheld by the United States Supreme Court in *Kansas v. Hendricks* (1997), 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501. The Kansas statute permitted involuntary commitment of sex offenders. In comparing the two statutes, we held that R.C. Chapter 2950 is "far less restrictive and burdensome" than the Kansas statute. *Cook*, 83 Ohio St.3d at 422, 700 N.E.2d at 585. We also stated that, with regard to R.C. Chapter 2950, the "General Assembly struck a balance between the privacy expectations of the offender and the paramount governmental interest in protecting members of the public from sex offenders." *Id.* at 413, 700 N.E.2d at 579. Taken in this context, we hold that R.C. Chapter 2950 is reasonable legislation because, although it impacts the lives of convicted sex offenders, the statute addresses legitimate governmental interests without a detrimental effect on individual constitutional rights.

{¶ 48} We have stated that the right to privacy under Section 1, Article I runs parallel to those rights of privacy guaranteed by the Fourteenth Amendment to the United States Constitution. *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 545, 21 O.O. 422, 424, 38 N.E.2d 70, 72. Further, when evaluating rights under Section 1, Article I, we find useful federal court interpretations of the Fourteenth Amendment. See *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 8, 15 O.O.3d 3, 4, 399 N.E.2d 66, 67. After reviewing both our own precedent and that from the federal courts, we hold that R.C. Chapter 2950 does not violate a convicted sex offender's right of privacy.

{¶ 49} The right to privacy has been described as "the right to be let alone; to live one's life as one chooses, free from assault, intrusion or invasion except as they can be justified by the clear needs of the community living under a government

of law." *Time, Inc. v. Hill* (1967), 385 U.S. 374, 413, 87 S.Ct. 534, 555, 17 L.Ed.2d 456, 481 (Fortas, J., dissenting); see, also, *Housh v. Peth* (1956), 165 Ohio St. 35, 39, 59 O.O. 60, 62, 133 N.E.2d 340, 343. As Justice Brandeis observed, the right to privacy is "the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States* (1928), 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, 956 (Brandeis, J., dissenting). Yet the right to privacy is not absolute. See *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 608, 640 N.E.2d 164, 167. Privacy of the individual will yield when required by public necessity. *Time, Inc.*, 385 U.S. at 413, 87 S.Ct. at 555, 17 L.Ed.2d at 481.

**{¶ 50}** The courts of appeals held that the notification provisions of R.C. Chapter 2950 violate a sex offender's right of privacy. The information disseminated to the public, however, is a public record, R.C. 2950.11(E), and the right to privacy encompasses only personal information and not information readily available to the public. See *Russell v. Gregoire* (C.A.9, 1997), 124 F.3d 1079, 1094, citing *Whalen v. Roe* (1977), 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64, 73.

**{¶ 51}** R.C. 2950.11(B) requires that public notice include the sex offender's name and address, the sexually oriented offense to which the offender was convicted or to which the offender pleaded guilty, and a statement that the offender has been adjudicated a sexual predator, and that, as of the date of the notice, the court has not entered a determination that the offender is no longer a sexual predator, or that the offender is a habitual sex offender. An individual's conviction has always been considered a public record. *Cook*, 83 Ohio St.3d at 413, 700 N.E.2d at 579. Further, the convicted sex offender's classification and other information are subject to disclosure because they are contained in a record required by law to be kept by a governmental agency, see *State ex rel. Milo's Beauty Supply Co. v. State Bd. of Cosmetology* (1977), 49 Ohio St.2d 245, 3 O.O.3d 374,

375, 361 N.E.2d 444, 445, and no evidence has been produced that a convicted sex offender's interest in non-disclosure of this information outweighs the government's interest in disclosure. Cf. *Nixon v. Admr. of Gen. Serv.* (1977), 433 U.S. 425, 465, 97 S.Ct. 2777, 2801, 53 L.Ed.2d 867, 905.

**{¶ 52}** Nor does the fact that the government is required to actively disseminate information collected from convicted sexual offenders, rather than merely allowing the public access, impact the right to privacy. Active distribution, as opposed to keeping open the doors to government information, is a distinction without significant meaning. The information at issue is a public record, and its characteristic as such does not change depending upon how the public gains access to it. We hold, therefore, that R.C. Chapter 2950 does not infringe upon a convicted sex offender's right to privacy.

**{¶ 53}** The courts of appeals also held that R.C. Chapter 2950 infringes upon the right to acquire or protect property, the right to pursue an occupation, and the right to a favorable reputation. We respectfully disagree.

**{¶ 54}** There is nothing in the community notification provisions in R.C. Chapter 2950 that hampers the right to seek out or acquire property. Notification is based upon the geographic area around the offender's residence. R.C. 2950.11(A)(1) through (9). Thus, before the community can be notified, the offender must have obtained a temporary or permanent residence, and the right to acquire property has not been implicated.

**{¶ 55}** Likewise, the right to pursue an occupation has not been violated by R.C. Chapter 2950. Every individual has the right to pursue a lawful occupation free from government interference unless the public good so requires. See *Butchers' Union Slaughter-House & Live-Stock Landing Co. v. Crescent City Live-Stock, Landing & Slaughter-House Co.* (1884), 111 U.S. 746, 757, 4 S.Ct. 652, 660, 28 L.Ed. 585, 591. There is no express language in the provisions of R.C. Chapter 2950, however, that prohibits convicted sex offenders from pursuing an occupation.

The assertion that R.C. Chapter 2950 enables private citizens to bar a convicted sex offender from obtaining a job, or to prohibit the acquisition of property is, based upon the record before us, mere speculation. It cannot be presumed that the receipt of public information will compel private citizens to lawlessness. Further, even if some private citizens impermissibly interfere with a convicted sex offender's rights, the offender may seek redress through this state's tort and criminal laws. R.C. Chapter 2950 does not remove an offender's access to the courts to seek redress for harms committed by other citizens.

{¶ 56} Likewise, R.C Chapter 2950 does not impair the right to a favorable reputation. A favorable reputation is not a protected liberty interest. See *Paul v. Davis* (1976), 424 U.S. 693, 711-712, 96 S.Ct. 1155, 1165-1166, 47 L.Ed.2d 405, 420; see, also, *Cook*, 83 Ohio St.3d at 413, 700 N.E.2d at 579. As we stated in *Cook*, " 'an allegation that government dissemination of information or government defamation has caused damage to reputation, even with all the attendant emotional anguish and social stigma, does not in itself state a cause of action for violation of a constitutional right. * * * ' Further, 'the harsh consequences [of] classification and community notification * * * come not as a direct result of the sexual offender law, but instead as a direct societal consequence of [the offender's] past actions.' " (Citations omitted.) *Cook*, 83 Ohio St.3d at 413, 700 N.E.2d at 579. Accordingly, we hold that R.C. Chapter 2950 does not violate the rights enumerated in Section 1, Article I of the Ohio Constitution.

B. Double Jeopardy Clause of the United States and Ohio Constitutions.

{¶ 57} The defendants argue that R.C. Chapter 2950 violates the Double Jeopardy Clauses contained in the Fifth Amendment to the United States Constitution and in Section 10, Article I of the Ohio Constitution. Specifically, the defendants argue that R.C. Chapter 2950 runs afoul of the Double Jeopardy Clause because it inflicts a second punishment upon a sex offender for a singular offense. It is argued that the registration and notification requirements are disproportionate

measures imposed after a criminal sentence has been served, and, therefore, a second punishment is imposed.

{¶ 58} The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Fifth Amendment to the United States Constitution; see, also, Section 10, Article I, Ohio Constitution. Although the Double Jeopardy Clause was commonly understood to prevent a second prosecution for the same offense, the United States Supreme Court has applied the clause to prevent a state from punishing twice, or from attempting a second time to criminally punish for the same offense. See *Kansas v. Hendricks*, 521 U.S. at 369, 117 S.Ct. at 2085, 138 L.Ed.2d at 519; *Witte v. United States* (1995), 515 U.S. 389, 396, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351, 361. The threshold question in a double jeopardy analysis, therefore, is whether the government's conduct involves criminal punishment. *Hudson v. United States* (1997), 522 U.S. 93, 101, 118 S.Ct. 488, 494, 139 L.Ed.2d 450, 460.

{¶ 59} This court, in *Cook*, addressed whether R.C. Chapter 2950 is a "criminal" statute, and whether the registration and notification provisions involved "punishment." Because *Cook* held that R.C. Chapter 2950 is neither "criminal," nor a statute that inflicts punishment, R.C. Chapter 2950 does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. We dispose of the defendants' argument here with the holding and rationale stated in *Cook*.

C. Bill of Attainder Clause of the United States Constitution.

{¶ 60} The defendants also argue that R.C. Chapter 2950 is an unconstitutional bill of attainder in violation of Section 10, Article I of the United States Constitution.[2] The Bill of Attainder Clause is violated, the defendants argue,

---

2. In their briefs, the defendants argue that R.C. Chapter 2950 violates the Bill of Attainder Clause in Section 9, Article I of the United States Constitution. Section 9, Article I, however, is only a limitation on the power of Congress to pass bills of attainder. See *Nixon v. Admr. of Gen. Serv.* (1977), 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867, 907, fn. 30. The states are

because R.C. Chapter 2950 inflicts punishment without a judicial trial. For reasons already enumerated, we hold that the Bill of Attainder Clause has not been violated by R.C. Chapter 2950.

{¶ 61} As defined by the United States Supreme Court, a bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon*, 433 U.S. at 468, 97 S.Ct. at 2803, 53 L.Ed.2d at 907, citing *United States v. Brown* (1965), 381 U.S. 437, 445, 447, 85 S.Ct. 1707, 1713-1714, 14 L.Ed.2d 484, 491; see, also, *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 280, 525 N.E.2d 805, 806. Thus, a bill of attainder is a law that (1) inflicts punishment, (2) without a judicial trial, (3) upon an identifiable individual. See *Nixon*, 433 U.S. at 468, 97 S.Ct. at 2803, 53 L.Ed.2d at 907. R.C. Chapter 2950 fails to meet all three elements and is not, therefore, a bill of attainder.

{¶ 62} As previously discussed, R.C. Chapter 2950 does not inflict punishment. *Cook*, 83 Ohio St.3d at 417, 700 N.E.2d at 581. Also, before a sex offender is classified as either a sexual predator or a habitual sex offender, a judicial hearing is conducted either at the time of trial for the underlying sex offense, or at a separate sex offender classification hearing. See R.C. 2950.09(A) and 2950.09(B)(1). Accordingly, there is no legislative infliction of punishment without a judicial trial.

{¶ 63} Nor does R.C. Chapter 2950 apply to an identifiable individual. In discussing this element, the United States Supreme Court stated that "arguing that an individual or defined group is attainted whenever he or it is compelled to bear burdens which the individual or group dislikes * * * removes the anchor that ties the bill of attainder guarantee to realistic conceptions of classification and punishment. [This] view would cripple the very process of legislating, for any

---

prohibited from passing bills of attainder by Section 10, Article I of the United States Constitution. *Id.*

individual or group that is made subject to adverse legislation can complain that the lawmakers could and should have defined the relevant affected class at a greater level of generality." (Citations omitted.) *Nixon*, 433 U.S. at 470, 97 S.Ct. at 2804, 53 L.Ed.2d at 908. Moreover, even if a legislative Act specifically refers to a specific individual or group, the Bill of Attainder Clause is not automatically implicated. *Id.* at 472, 97 S.Ct. at 2805, 53 L.Ed.2d at 909. A further inquiry is necessary to determine if punishment has been inflicted. *Id.*

{¶ 64} The fact that R.C. Chapter 2950 applies only to convicted sex offenders does not render the statute sufficiently specific within the meaning of the Bill of Attainder Clause. R.C. Chapter 2950 applies to a far broader class of individuals than the legislation at issue in *Nixon*. Even if, however, we believed the specificity element to be satisfied, R.C. Chapter 2950 does not inflict punishment without a judicial trial. Thus, the statute cannot be found to violate the Bill of Attainder Clause of Section 10, Article I of the United States Constitution. See *Id.*

D. Equal Protection Clauses of the United States and Ohio Constitutions.

{¶ 65} The defendants further contend that R.C. Chapter 2950 violates their right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. The defendants argue that there is no rational basis in distinguishing between current sex offenders and sex offenders who were not incarcerated as of the effective date of the statute. It is also argued that application of the "clear and convincing" standard to pre-H.B. 180 offenders and not future offenders involves both a suspect class and fundamental rights. We find these arguments to be unpersuasive.

{¶ 66} The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause prevents states from treating people differently under its laws on an arbitrary basis. *Harper v. Virginia*

24

*State Bd. of Elections* (1966), 383 U.S. 663, 681, 86 S.Ct. 1079, 1089, 16 L.Ed.2d 169, 181 (Harlan, J., dissenting). "Whether any such differing treatment is to be deemed arbitrary depends on whether or not it reflects an appropriate differentiating classification among those affected; the clause has never been thought to require equal treatment of all persons despite differing circumstances." *Id.*

{¶ 67} Under the Equal Protection Clause, a legislative distinction need only be created in such a manner as to bear a rational relationship to a legitimate state interest. *Clements v. Fashing* (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, 515. These distinctions are invalidated only where "they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." *Id.*; see, also, *Heller v. Doe* (1993), 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257, 271; *Am. Assn. of Univ. Professors, Cent. State Univ. v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 58, 717 N.E.2d 286, 290. This rational basis analysis is discarded for a higher level of scrutiny only where the challenged statute involves a suspect class or a fundamental constitutional right. *Clements*, 457 U.S. at 963, 102 S.Ct. at 2843, 73 L.Ed.2d at 515-516; see, also, *Cleburne v. Cleburne Living Ctr.* (1985), 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320. We must first determine whether the provisions of R.C. Chapter 2950 deserve a higher level of scrutiny than that provided by a rational basis review.

{¶ 68} "[A] suspect class is one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.' " *Massachusetts Bd. of Retirement v. Murgia* (1976), 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520, 525, quoting *San Antonio Indep. School Dist. v. Rodriguez* (1973), 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16, 40. Moreover, the only classifications recognized as "suspect" are those involving race, alienage, and ancestry. *Id.* at 312, 96 S.Ct. at

2566, 49 L.Ed.2d at 524, fn. 4. Sex offenders, therefore, are not a suspect class. See *Cutshall v. Sundquist* (C.A.6, 1999), 193 F.3d 466, 482; *Artway v. Atty. Gen. of New Jersey* (C.A.3, 1996), 81 F.3d 1235, 1267.

{¶ 69} Nor does R.C. Chapter 2950 implicate a fundamental constitutional right. Recognized fundamental rights include the right to vote, the right of interstate travel, rights guaranteed by the First Amendment to the United States Constitution, the right to procreate, and other rights of a uniquely personal nature. *Murgia*, 427 U.S. at 312, 96 S.Ct. at 2566, 49 L.Ed.2d at 524, fn. 3; see, also, *Albright v. Oliver* (1994), 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114, 122. As discussed in Part II(A), *supra*, there is nothing in R.C. Chapter 2950 that infringes upon any fundamental right of privacy or any other fundamental constitutional right that has been recognized by the United States Supreme Court. Because neither a suspect class nor a fundamental constitutional right is implicated by the provisions of R.C. Chapter 2950, a rational basis analysis is appropriate. See *Clements*, 457 U.S. at 963, 102 S.Ct. at 2843, 73 L.Ed.2d at 515.

{¶ 70} Under the rational basis standard, we are to grant substantial deference to the predictive judgment of the General Assembly. See *Turner Broadcasting Sys. v. Fed. Communications Comm.* (1997), 520 U.S. 180, 195, 117 S.Ct. 1174, 1189, 137 L.Ed.2d 369, 391. The state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, the challenger must negative every conceivable basis before an equal protection challenge will be upheld. See *Heller*, 509 U.S. at 320, 113 S.Ct. at 2642, 125 L.Ed.2d at 271.

{¶ 71} The defendants argue that R.C. Chapter 2950 denies equal protection of the laws because the statute applies to those sex offenders who are currently imprisoned, and not to those sex offenders who were released from prison prior to the statute's enactment date. The General Assembly could have rationally concluded, for example, that the burdens associated with locating sex offenders

would have created an administrative and fiscal challenge that would have rendered the statute practically inoperative. See *State v. Ward* (1999), 130 Ohio App.3d 551, 566, 720 N.E.2d 603, 614. Regardless of the potential reasons for the enactment of the statute, however, the defendants have failed to present any arguments that negate the reasons that produced R.C. Chapter 2950. Accordingly, an equal protection challenge cannot be upheld. *Heller*, 509 U.S. at 320, 113 S.Ct. at 2642, 125 L.Ed.2d at 271.

{¶ 72} It is also asserted that the use of the "clear and convincing" standard denies equal protection of the laws. This is so, the defendants argue, because sex offenders who are charged in an indictment as a sexually violent predator are entitled to have a jury determine the specification by proof beyond a reasonable doubt.

{¶ 73} As aptly noted by the Eighth District Court of Appeals, this argument "misstates R.C. Chapter 2950 because there is no 'sexual predator specification' contained in that chapter. There is a 'sexually violent predator specification' contained in R.C. 2971.01(I) that applies to those who have been convicted of a sexually violent offense * * * and who are likely to commit another violent offense in the future." (Citations omitted.) *Ward*, 130 Ohio App.3d at 567, 720 N.E.2d at 614. "Unlike the remedial aspects of a sexual predator determination, the provisions of the sexually violent predator specification are penalty provisions which enhance the offender's sentence." *Id.*

{¶ 74} "Because there are punitive aspects of the sexually violent predator specification, the law requires that, like any other specification, those aspects be determined by proof beyond a reasonable doubt. This is in direct contrast to the nonpunitive notice and registration requirements [of R.C. Chapter 2950]." *Id.* Since there are two separate classes of individuals under R.C. Chapter 2950 and R.C. 2971.01(I)—one class subject to civil law and the other subject to criminal— a rational basis exists to apply two different standards of review. Accordingly, the

defendant's equal protection argument must fail. See, *e.g.*, *Clements*, 457 U.S. at 963, 102 S.Ct. at 2843, 73 L.Ed.2d at 515.

E. Void for Vagueness.

**{¶ 75}** The defendants urge us to hold that R.C. Chapter 2950 is void for vagueness because the statute requires courts to find that a sex offender is likely to commit future offenses under a clear and convincing standard. The defendants further argue that the statute is unconstitutionally vague because the statute does not provide adequate guidance regarding the application of the factors in R.C. 2950.09(B)(2).

**{¶ 76}** The void-for-vagueness doctrine ensures that individuals can ascertain what the law requires of them. See *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226-1227. In order to survive a void-for-vagueness challenge, the statute at issue must be written so that a person of common intelligence is able to determine what conduct is prohibited, and the statute must provide sufficient standards to prevent arbitrary and discriminatory enforcement. *Chicago v. Morales* (1999), 527 U.S. 41, 56-57, 119 S.Ct. 1849, 1859, 144 L.Ed.2d 67, 80; see, also, *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 358, 588 N.E.2d 116, 120. A statute will not be declared void, however, merely because it could have been worded more precisely. See *Roth v. United States* (1957), 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498, 1510-1511. Mathematical precision has never been required. See *Boyce Motor Lines v. United States* (1952), 342 U.S. 337, 340, 72 S.Ct. 329, 330-331, 96 L.Ed. 367, 371.

**{¶ 77}** As an initial matter, it should be noted that the defendants are raising facial-vagueness challenges to R.C. Chapter 2950. Facial-vagueness challenges are generally allowed only where the statute is vague in all of its applications. *Anderson*, 57 Ohio St.3d at 173, 566 N.E.2d at 1228, fn. 2, citing *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 494-

495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362. This means that the statute does not supply a definitive standard by which to determine what conduct is included and what conduct is excluded. As will be discussed, R.C. Chapter 2950 does provide an adequate standard upon which to make a sexual predator determination. Accordingly, it is not impermissibly vague in all its applications, and a facial challenge will not be sustained. Further, of the three defendants in these consolidated cases, only Suffecool could potentially raise an as-applied challenge to the statute. The trial courts in both the *Williams* and *Worthy* cases declared R.C. Chapter 2950 unconstitutional prior to any sexual predator classification hearing. Williams and Worthy, therefore, cannot complain of the vagueness of the law as applied to others. Cf. *Village of Hoffman Estates*, 455 U.S. at 494-495, 102 S.Ct. at 1191, 71 L.Ed.2d at 369.

{¶ 78} As stated, a law will survive a void-for-vagueness challenge if it is written so that a person of common intelligence is able to ascertain what conduct is prohibited, and if the law provides sufficient standards to prevent arbitrary and discriminatory enforcement. *Morales*, 527 U.S. at 56-57, 119 S.Ct. at 1859, 144 L.Ed.2d at 80. First, R.C. Chapter 2950 does not prohibit any conduct. Its provisions merely establish remedial registration and notification requirements for those sex offenders adjudicated to be a habitual sex offender or a sexual predator. As noted by this court, remedial measures require less specificity to satisfy a void-for-vagueness challenge than do criminal statutes. *Salem v. Ohio Liquor Control Comm.* (1973), 34 Ohio St.2d 244, 246, 63 O.O.2d 387, 388-389, 298 N.E.2d 138, 140. Second, R.C. Chapter 2950, on its face, does set forth sufficiently specific guidelines to prevent arbitrary and discriminatory enforcement.

{¶ 79} The defendants argue that use of the "clear and convincing" standard to make a finding that a sex offender is likely to commit future offenses is illogically vague. We fail to understand, however, how the likelihood of future conduct and the burden of proof required to make that finding conflict in such a manner as to

render the statute vague. "This assessment of probability is both conceptually and practically distinct from the burden of proof. A 'burden of proof' is the duty imposed * * * on the party who is legally required to persuade a trier of fact that the party is entitled to some form of legal redress. In this case, the clear-and-convincing-evidence standard require[s] the state to present evidence that would give the court a firm belief or conviction that [a] defendant [is] likely to commit another sexually oriented offense in the future." *Ward*, 130 Ohio App.3d at 569, 720 N.E.2d at 616. Therefore, we find nothing impermissibly vague about the use of the clear and convincing standard in R.C. Chapter 2950.

**{¶ 80}** In addition, R.C. Chapter 2950 provides guidelines for a court to make a sexual predator determination. R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." The court is to make this determination upon the state's presentation of clear and convincing evidence. R.C. 2950.09(B)(3) and 2950.09(C)(2). R.C. 2950.09(B)(2) further provides factors that the court is required to consider in making a determination as to the sex offender's probability of future conduct.

**{¶ 81}** R.C. Chapter 2950 is far different, for example, than the statute declared void in *Morales*. In *Morales,* the United States Supreme Court declared an ordinance that gave police discretion to disperse groups of people if they are in a place without an apparent purpose, without defining what is an "apparent purpose," to be unconstitutionally vague. 527 U.S. at 56-57, 119 S.Ct. at 1859, 144 L.Ed.2d at 80. Here, R.C. Chapter 2950 provides factors to help define when an offender is "likely to engage in the future in one or more sexually oriented offenses," R.C. 2950.01(E), and is more specific than the *Morales* ordinance.

**{¶ 82}** Even if the terms of R.C. 2950.09 are worded broadly, a certain level of broadness in the language of R.C. Chapter 2950 allows for individualized

assessment rather than an across-the-board rule. "Because each sexual-predator determination is fact-specific, the framework provided to the courts in the statute must be broadly worded to accommodate both the most common and most exceptional cases." *State v. Avery* (1998), 126 Ohio App.3d 36, 54, 709 N.E.2d 875, 887. By writing the statutory language to accommodate for individualized assessments, the General Assembly has not rendered R.C. Chapter 2950 unconstitutionally vague. Any abuses in the sex offender classification hearing or any misapplication of the factors in R.C. 2950.09(B)(2) to a particular individual can be cured through the appellate process. See R.C. 2950.09(B)(3). We will not rule out the possibility that R.C. Chapter 2950 may be misapplied on an individual basis, but the statute is facially constitutional.

### III. Conclusion.

{¶ 83} For the foregoing reasons, we hold that R.C. Chapter 2950 is constitutional on the grounds raised in these appeals. We, therefore, reverse the judgments of the courts of appeals in case Nos. 99-286 and 99-764, and remand the causes to the trial courts for hearings consistent with the provisions of R.C. Chapter 2950. We also affirm the judgment of the court of appeals in case No. 99-765.

*Judgments reversed and*

*causes remanded*

*in case Nos. 99-286 and 99-*

*764.*

*Judgment affirmed*

*in case No. 99-765.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____