OPINION
Appellant James Curtis Butler, Jr., appeals a judgment of the Stark County Common Pleas Court adjudicating him to be a sexual predator pursuant to R.C. 2950.09:
ASSIGNMENTS OF ERROR
 I. THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT COMMITTED AN OFFENSE FOR THE PURPOSE OF SEXUAL GRATIFICATION THEREBY CLASSIFYING HIM UNDER HOUSE BILL 180.
 II. THE TRIAL COURT ERRED IN PERMITTING INADMISSIBLE HEARSAY INTO EVIDENCE THEN RELYING ON SAID UNRELIABLE EVIDENCE IN DETERMINING WHETHER TO CLASSIFY THE DEFENDANT UNDER H.B. 180.
 III. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION REQUESTING FUNDING FOR A PSYCHOLOGICAL EVALUATION OF THE INDIGENT DEFENDANT TO BE CONSIDERED IN THE H.B. 180 PROCEEDINGS.
 IV. THE TRIAL COURT ERRED IN CLASSIFYING APPELLANT AS A SEXUAL PREDATOR WITHOUT A RECORD OF CLEAR AND CONVINCING EVIDENCE SUFFICIENT TO SUPPORT THE FINDING.
 V. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS THE H.B. 180 PROCEEDINGS AGAINST HIM ON EX POST FACTO GROUNDS.
 VI. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS THE H.B. 180 PROCEEDINGS AGAINST HIM ON RETROACTIVE APPLICATION GROUNDS.
 VII. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS H.B. 180 PROCEEDINGS AGAINST HIM ON DOUBLE JEOPARDY GROUNDS.
 VIII. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BECAUSE H.B. 180 IS UNCONSTITUTIONALLY VAGUE.
At around 11:35 p.m. on August 5, 1987, Helen Crawford was stabbed to death by appellant, who was the 74-year-old woman's paper boy. Crawford lived alone. She was found by police with her bathrobe open and pulled above her waist, exposing her breasts and vaginal area. Her panties were laying on the floor next to her.
On the night in question, Canton Police Officer Richard Schaefer responded to Crawford's home after receiving a call from a neighbor. Schaefer proceeded to the back of the house, where he noticed the bedroom window was open. He observed Crawford's body, with her robe open and pulled above her waist. She was not wearing underwear. He noticed that her panties were on the floor about a foot away from her body, at the base of a dresser, which was blocking the bedroom door. Schaefer noticed blood on both the dresser and the door.
Schaefer immediately proceeded to the front door, forcing the door open to gain entry. He then shoved the bedroom door open, pushing the dresser away enough to permit entry. He observed a bloody hand print high on the door, and blood splatters in the room and the doorway. Schaefer noticed that the woman's breasts and vaginal area were exposed as a result of her panties being removed, and her robe opened and pulled over her waist.
Detective Michael O'Brien, took charge of the investigation and examined the crime scene. Based on this examination, the detective believed the killer had attempted to rape Crawford. He noticed defensive wounds on Crawford, indicating that struggle had occurred at the scene.
A neighbor reported to police that she saw appellant come to Crawford's residence shortly after 11:30 p.m., and Crawford had allowed him to come inside. Five to six minutes later, she heard Crawford screaming for help, and saw appellant run from the residence.
Several hours after processing the crime scene, O'Brien went to appellant's residence to speak with him. He was taken to the police station for interrogation, where he denied leaving home that night. At one point in the interrogation, appellant asked whether the woman had been hurt, although O'Brien had not told appellant that a woman was involved.
O'Brien spoke with appellant about a month before the attack on Helen Crawford about a robbery. Appellant pushed a 20-year old woman down, and stole her money. The woman was pushing her baby in a stroller at the time, and the force not only knocked her down, but knocked over the stroller, sending the baby onto the ground. Appellant left after the woman started screaming.
On the evening of July 2, 1987, Tiffany Winder came home very upset, and told her father that appellant tried to rape her. Appellant had given Tiffany problems in the past, by making sexual comments to her and trying to fondle her. Appellant went to school with Tiffany. When Tiffany was interviewed by police, she stated that she was walking home at 6:30 p.m., when she saw appellant coming from the opposite direction. Because of prior incidents, she was afraid of appellant, and turned to walk away. Appellant came up behind her and grabbed her by the waist, pulling her into a high grassy area next to the path where she had been walking. Appellant tried to kiss her several times. When Tiffany struggled to get away, appellant bent her over, and removed her shorts and panties. He then placed his hand on Tiffany's vaginal area. He pulled down his pants and attempted to penetrate her with his penis; however, a person came down the path at the time, and appellant let Tiffany go. He told her to hide in the bushes until the person had passed. Tiffany put her shorts back on and ran home, where she told her parents what happened. Based on this information, Tiffany's father signed a criminal complaint against appellant. The case was subsequently dismissed by the prosecutor's office as appellant had been arrested and charged with the aggravated murder of Helen Crawford.
Appellant was charged with delinquency by reason of committing the crime of aggravated murder. The Court of Common Pleas, Juvenile Division, relinquished jurisdiction, and bound the case over to the General Division for prosecution of appellant as an adult. After a competency evaluation, appellant entered a plea of guilty to one count of aggravated murder. The court sentenced him to a term of life imprisonment with parole eligibility after 20 years. On appeal, the judgment was affirmed. Appellant appealed the decision to the Ohio Supreme Court, which accepted the case for review, and affirmed the decision of the court of appeals. State v. Butler (1990),48 Ohio St.3d 78.
On February 21, 2001, the Stark County Common Pleas Court conducted a classification hearing to determine appellant's status as a sex offender. In addition to the introduction of exhibits, the State presented the testimony of three of the police officers who investigated the death of Helen Crawford, as well as the father of the juvenile victim of appellant's sexual assault. Based upon this evidence, the court concluded that appellant had committed the aggravated murder of Crawford with a purpose to gratify his sexual needs or desires. R.C. 2950.01
(D)(3). The court found by clear and convincing evidence that appellant should be classified as a sexual predator.
 I
Appellant argues that the court erred in finding by clear and convincing evidence that appellant had committed the aggravated murder of Helen Crawford for the purpose of sexual gratification.
A sexual predator is defined as a person who has been convicted of or pleaded guilty to committing a sexually oriented offense, and is likely to engage in the future in one or more sexually oriented offenses. R.C.2950.01 (E). A sexually oriented offense is defined to include the crime of aggravated murder, if committed with a purpose to gratify the sexual needs or desires of the offender. R.C. 2950.01 (D)(3). The State has the burden of proving by clear and convincing evidence that a convicted offender qualifies as a sexual predator pursuant to the statutory definition. Clear and convincing evidence is the measure of proof which is more than a mere preponderance of the evidence, but not to the extent of certainty as required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. State v. Anderson
(1999), 135 Ohio App.3d 759, 763.
Appellant argues that the evidence in this case shows that he stabbed Crawford outside of her bedroom, and that she fled and barricaded herself in the room, while appellant went to the bathroom to wash his hands. He argues that Crawford's bathrobe opened up and slid up her body as she fell to the floor. Appellant argues that either she was not wearing her panties at the time of the assault, or took them off sometime after the attack. Appellant argues that his interpretation of the facts was a reasonable one, the evidence cannot rise to the level of clear and convincing.
While only a small number of sexual predator cases have involved offenses that were not sexual offenses by statutory definition, the Court of Appeals for Miami County has stated a standard of review for a claim challenging the evidence in support of the gratification prong of the statutory definition of sexual predator. Where there is not testimony or direct evidence that the offender was gratifying himself sexually, a finding of purpose of sexual arousal or gratification may be inferred from the type, nature, and circumstances surrounding the contact. Statev. Anderson (March 3, 2000), Miami Appellate No. 99-CA-19, unreported. If the evidence, viewed in a light most favorable to the prosecution, and believed by the trier of fact, could permit a rational trier of fact to infer that a defendant's conduct was for the purpose of his own sexual arousal or gratification, the finding is reasonable and supported by sufficient evidence. Id.
In the instant case, the type, nature, and circumstances surrounding the attack support the court's conclusion, by clear and convincing evidence, that appellant committed the aggravated murder for the purpose of sexual gratification. The evidence supports a finding that appellant entered Crawford's home with the purpose of sexually assaulting her. The victim was found with her robe open and pulled up, and her panties off. Based on the evidence of appellant's activities in the time frame of the murder, the court could conclude that appellant had demonstrated the inclination to physically and sexually assault women. While their ages differed, all three victims would not be expected to offer much resistance. The evidence in this case demonstrates that Crawford attempted to resist, as evidenced by defensive wounds. The evidence supports an interpretation that appellant had removed her panties, opened and pulled up her bathrobe after she retreated to the bedroom in an attempt to get away from appellant. After she resisted, appellant stabbed her. Her screams for help motivated appellant to run from the home, after washing his blood from her hands. Crawford took advantage of her flight to barricade herself in her room to prevent further attacks.
The court's finding that appellant was a sexual predator is supported by sufficient evidence.
The first assignment of error is overruled.
 II
Appellant argues that the court erred in allowing William James Winder to testify about what his daughter Tiffany related to him about appellant's sexual assault, as this evidence was hearsay. At the hearing, appellant also objected to Detective Norcia testifying as to what Tiffany told him about the attack. However, in his assignment of error, appellant does not specifically refer to Norcia's testimony, but only refers to the testimony of Tiffany's father.
In State v. Cook (1998), 83 Ohio St.3d 404, cert. denied (1999),525 U.S. 1182, the Ohio Supreme Court specifically considered the applicability of the Rules of Evidence to sex offender classification hearings, and whether hearsay is admissible at such hearings. The court held that the rules did not strictly apply to such hearings, and that reliable hearsay evidence is admissible if relevant to the legal issue of the hearing. Id.
In the instant case, evidence of sexual and violent conduct by appellant a mere month prior to the homicide of Crawford was relevant to determine appellant's likelihood to re-offend. The only question remaining is whether the testimony of the victim's father was reliable.
Tiffany immediately ran home when she had the chance to escape from appellant, and told her parents what had happened. Tiffany's father testified that Tiffany was very emotional as she told him what happened. The statements clearly demonstrate indicia of reliability as excited utterances, which are admissible as an exception to the hearsay rule. Evid. R. 803 (2). Appellant has not demonstrated a motivation to lie or fabricate in the instant case. While appellant hypothesizes in his brief that the discovery of an interracial relationship between appellant and Tiffany could cause her to fabricate the story, nothing in the record supports this proposition. There is nothing to suggest a relationship between Tiffany and appellant existed and was discovered by anyone, thus, he has not demonstrated any motivation for Tiffany to fabricate a story of rape.
While appellant does not specifically challenge the testimony of Detective Norcia in this assignment of error, his evidence concerning the sexual assault of Tiffany Winder was merely cumulative of the testimony of William James Winder.
The second assignment of error is overruled.
 III
Appellant argues that the court abused its discretion in overruling his motion for appointment of an expert witness to provide a psychological evaluation of his likelihood to re-offend.
In State v. Eppinger (2001), 91 Ohio St.3d 158, the Ohio Supreme Court held that indigent offenders may be entitled to appointment of an expert witness to assist them in their defense at a classification hearing. An expert witness shall be provided to an indigent offender if the court determines, within its sound discretion, that such services are reasonably necessary to determine whether the offender is likely to engage in the future in one or more sexually oriented offenses within the meaning of R.C. 2950.01 (E). Id. at syllabus. In Eppinger, the Supreme Court ruled that the trial court abused its discretion in denying the offender's motion for appointment of an expert, as there was scant evidence in the record relating to the offender's likelihood to re-offend. Id. at 159. In Eppinger, there was no history of similar offenses or other incidents. Id. at 163. The court concluded that an expert was necessary in that case because the offender had been convicted of only one sexually oriented offense, and there was an absence of a history of similar offenses or other indicators. Id.
In the instant case, other indicators of a likelihood to re-offend were clearly present, and presented as evidence at the classification hearing. The evidence reflected that in a short time period leading up to the assault of Crawford, appellant had twice attempted to use violence to accomplish his goals, both in the robbery of Julie Williams, and the sexual assault on Tiffany Winder. Based on the evidence of appellant's past conduct, the court had evidence which allowed the court to assess his likelihood to re-offend. The court did not abuse its discretion in overruling his motion for appointment of an expert witness.
The third assignment of error is overruled.
 IV
Appellant argues that the court erred in finding him to be a sexual predator, as there was not clear and convincing evidence of his likelihood to re-offend, or that he committed the aggravated murder of Helen Crawford with the purpose of satisfying his sexual needs or desires.
R.C. 2950.09 (B)(2) sets forth a number of non-exclusive factors which the court must consider in accessing when an offender qualifies as a sexual predator:
 (2) In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
Recently, the Ohio Supreme Court has noted that these guidelines do not control the judge's discretion. State v. Thompson (2001),92 Ohio St.3d 584, 587. The statute does not direct the court on what weight, if any, it must assign to each factor. Id. Determining recidivism is at best imperfect science, and while the guidelines may set forth potentially relevant factors, some may not be applicable in every case, and the statute therefore does not divest a court of its fact finding powers in assessing the relevancy of each factor. Id. at 587-588.
In the instant case, the court considered the factors and all relevant evidence, and concluded that appellant was a sexual predator as defined in the statute. As discussed in Assignment of Error I, an interpretation of the facts, supported by the evidence, could allow the court to find by clear and convincing evidence that appellant intended to assault Helen Crawford sexually. The evidence further reflects that her resistence to his attacks could have caused him to kill her, especially since she could identify him later, as he was her paper boy. The victim was elderly, indicating his ability or unwillingness to comply with one of society's rules to protect a class of one of our most vulnerable citizens. Appellant's age is an aggravating factor, since he demonstrated violent sexual proclivities at the age of 15. Such desires, and a willingness to act upon them at a young age, demonstrates a likelihood to re-offend, as found by the trial court.
The fourth assignment of error is overruled.
 V
Appellant argues that the sexual predator classification proceedings should have been dismissed on ex post facto grounds. This assignment of error is overruled on the authority of State v. Cook, supra, at paragraph two of the syllabus.
The fifth assignment of error is overruled.
 VI
Appellant argues that the court erred in overruling his motion to dismiss on state retroactivity grounds. This assignment of error is overruled on the authority of Cook, supra, at paragraph one of the syllabus.
The sixth assignment of error is overruled.
 VII
Appellant argues that the retroactive application of the classification and registration provisions violates the federal and state prohibitions against double jeopardy. This assignment of error is overruled on the authority of State v. Williams (2000), 88 Ohio St.3d 513, 527-28, cert.denied sub non., Suffecool v. Ohio (2000), 531 U.S. 902.
The seventh assignment of error is overruled.
 VIII
Appellant argues that the court erred in overruling his motion to dismiss on the basis that House Bill 180, amending R. C. Chapter 2950, is unconstitutionally vague. This assignment of error is overruled on the basis of Williams, supra, at 533.
The eighth assignment of error is overruled.
The judgment of the Stark County Common Pleas Court is affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court is affirmed. Costs to appellant.
By Gwin, J., Hoffman, P. J., and Edwards, J., concur