OPINION
{¶ 1} Defendant-appellant, Ralph W. Bowman, appeals from a judgment of the Franklin County Court of Common Pleas that classified defendant as a sexually oriented offender.
 {¶ 2} According to the state, on August 18, 2001, at approximately 4:15 a.m., defendant entered a residence on Caldwell Place in Columbus, Ohio, in which William Evans, 12 years old, and his friend were asleep in the front room. Evans's friend's mother was asleep in the upstairs bedroom. At the time, Evans was an overnight guest at his friend's home.
 {¶ 3} Defendant grabbed Evans by the arm and pulled him up, awakening Evans. Defendant had what Evans's friend believed to be a gun in one hand. Defendant told Evans to do what he was told or he would be killed. Defendant then pulled Evans from the residence, exiting through the back door. Defendant gave Evans a towel and told Evans to cover his face. Defendant placed Evans into a car, entering through the driver's side, and ordered him to sit in the passenger seat with his head in his lap and the towel over his head.
 {¶ 4} Defendant then drove to a location on North Monroe Avenue and parked. Police officers, who were responding to an unrelated burglary in progress call, observed defendant, who was seated in the car. Believing defendant may have been involved in the burglary, police officers investigated.
 {¶ 5} As defendant exited his vehicle and began to walk away, police officers ordered defendant to stop. Officers frisked defendant and found a toy weapon, a cap gun or a BB gun, in his pocket. Police officers also found Evans in the car with his head in his lap and his head covered. Evans had been crying. Police contacted Evans's mother who confirmed Evans was supposed to be spending the night with his friend at the Caldwell Place residence.
 {¶ 6} At the time of defendant's apprehension, Evans was not wearing a shirt and Evans's right arm had several scratches on it. After executing a search warrant, police recovered from the car, which belonged to defendant's mother, papers and letters that belonged to defendant and material related to an academy for which defendant had been employed. Police also recovered a portfolio or briefcase from the car's trunk that contained personal ads from males from an Internet website; two of the persons listed in the ads identified their occupation as high school student and appeared partially clad. Additionally, police recovered a novel from the backseat of the car, which, according to the novel's description, concerns a male character that attends a ten-year high school reunion and sees his former gymnastics coach, a male, who stole the male student's virginity. According to the state, this novel contained sexually explicit passages. This novel had been borrowed from a public library; however, the state did not proffer evidence that defendant himself had borrowed the library book. Furthermore, the state did not proffer evidence the portfolio or briefcase belonged to defendant.
 {¶ 7} For his part, as reported in a presentence investigation report that was admitted into evidence, defendant claimed the incident was a prank that backfired against defendant. Specifically, according to defendant, because Evans's friend's mother routinely left her residence unlocked, defendant claimed he wanted to teach a lesson to Evans's friend's mother.
 {¶ 8} According to defendant, at approximately 2:15 or 2:30 a.m., defendant entered the Caldwell Place residence through the back door. Defendant went to the Caldwell Place residence to use a computer; this computer was located in the same room in which Evans and his friend were watching a pornographic video. When defendant entered the Caldwell Place residence, Evans and his friend switched the videotape.
 {¶ 9} After Evans and his friend went to sleep on the floor, defendant reached down and told Evans, whom defendant mistakenly believed was Evans's friend, to come with him. Evans arose and followed defendant into defendant's car. Defendant started the car and informed Evans his intention was to drive up the street to a pay phone, call Evans's friend's mother, and ask her to go downstairs and check the living room.
 {¶ 10} While defendant and Evans were in the car, Evans inquired whether defendant was going to return Evans to his friend's house. Defendant then drove further down the street with the intention of turning around and returning to the Caldwell Place residence. However, the police were ahead of defendant and had blocked off the street. As defendant backed up to turn around, a police officer exited a vehicle and queried defendant. Police officers frisked defendant and then searched defendant's car. Defendant disputed the state's claim that the toy weapon was found on defendant's person; rather, according to defendant, the toy weapon was located in the car's trunk.
 {¶ 11} By Grand Jury indictment filed on August 27, 2001, defendant was charged with one count of kidnapping, a violation of R.C.2905.01, and one count of abduction, a violation of R.C. 2905.02.
 {¶ 12} On May 20, 2002, defendant pled guilty to count two of the indictment, abduction, a felony of the third degree. Upon application by the state, the trial court ordered that nolle prosequi be entered for count one of the indictment. On August 15 and August 16, 2002, the trial court conducted a sentencing hearing.
 {¶ 13} After reviewing the evidence, the trial court did not find defendant's account of the events of August 18, 2001, to be credible. At the August 16, 2002 hearing, the trial court orally pronounced sentence and determined defendant to be a sexual predator.
 {¶ 14} Although on August 16, 2002, the trial court orally pronounced defendant to be a sexual predator, in an August 20, 2002 judgment entry, the trial court classified defendant as a sexually oriented offender, not a sexual predator. In an August 20, 2002 sentencing addendum, the trial court again determined defendant to be a sexually oriented offender. On September 19, 2002, in a handwritten notation, the trial court changed the sentencing addendum's classification from sexually oriented offender to sexual predator. Subsequently, on September 20, 2002, the trial court filed a corrected judgment entry, classifying defendant as a sexual predator.
 {¶ 15} On September 18, 2002, defendant timely appealed the August 20, 2002 judgment entry and sentencing addendum. In this appeal, defendant assigns two errors:
[1.] Appellant's Classification As A Sexual Predator, Pursuant To Ohio Revised Code Sections 2950.01(D)(1)(b) And 2950.01(E), Is Unconstitutional As Applied To Appellant In This Case Because His Conviction Was Improperly Classified As A Sexual Oriented Offense.
[2.] The Trial Court's Determination That Appellant Is A Sexual Predator Is Not Supported By Clear And Convincing Evidence.
 {¶ 16} "R.C. Chapter 2950 defines three classifications of sex offenders: sexual predators, habitual sexual offenders, and sexually oriented offenders." State v. Eppinger (2001), 91 Ohio St.3d 158, 161, citing former R.C. 2950.09; State v. Cook (1998), 83 Ohio St.3d 404,407, certiorari denied (1999), 525 U.S. 1182, 119 S.Ct. 1122. "`At a sexual offender classification hearing, decisions are made regarding classification, registration, and notification that will have a profound impact on a defendant's life.'" Eppinger at 162, quoting State v. Gowdy (2000), 88 Ohio St.3d 387, 398.
 {¶ 17} Although not raised by the parties, we first consider whether the trial court's September 19, 2002 handwritten amendment of an August 20, 2002 sentencing addendum and its September 20, 2002 corrected judgment entry are legally cognizable. In this case, after defendant filed his notice of appeal on September 18, 2002, the trial court amended its August 20, 2002 sentencing addendum and filed a corrected judgment entry, changing defendant's sexual offender classification from sexually oriented offender to sexual predator. See August 20, 2002 Sentencing Addendum (handwritten notation dated September 19, 2002 changing sexual offender classification from sexually oriented offender to sexual predator); September 20, 2002 corrected judgment entry (classifying defendant as sexual predator).
 {¶ 18} Generally, "[w]hen a case has been appealed, the trial court retains all jurisdiction not inconsistent with the court of appeals' jurisdiction to reverse, modify, or affirm the judgment." Yee v. Erie Cty. Sheriff's Dept. (1990), 51 Ohio St.3d 43, 44, citing In re Kurtzhalz (1943), 141 Ohio St. 432, paragraph two of the syllabus.
 {¶ 19} Here, even though the trial court orally pronounced defendant to be a sexual predator at the August 16, 2002 sentencing hearing (Tr. Vol. II, 37), because a court speaks from its journal and not by oral pronouncements from the bench, In re Honaker (May 10, 2001), Franklin App. No. 00AP-1269, citing Bittmann v. Bittmann (1934),129 Ohio St. 123, 127; Schenley v. Kauth (1953), 160 Ohio St. 109, paragraph one of the syllabus, the trial court's August 16, 2002 oral pronouncement did not constitute judgment. Rather, the trial court's August 20, 2002 judgment and August 20, 2002 sentencing addendum, in which it determined defendant was a sexually oriented offender, not a sexual predator, constituted a judgment. See August 20, 2002 judgment entry; August 20, 2002 sentencing addendum.
 {¶ 20} As previously noted, on September 18, 2002, defendant appealed the trial court's August 20, 2002 judgment and the August 20, 2002 sentencing addendum, which classified defendant as a sexually oriented offender. On September 19, 2002, the trial court amended its August 20, 2002 sentencing addendum, changing defendant's sexual offender classification from sexually oriented offender to sexual predator. The next day, on September 20, 2002, the trial court filed a corrected judgment entry, classifying defendant as a sexual predator.
 {¶ 21} Because the trial court's handwritten September 19, 2002 amendment of its August 20, 2002 sentencing addendum and its September 20, 2002 corrected judgment entry, which found defendant to be a sexual predator, are inconsistent with this court's jurisdiction to reverse, modify, or affirm the appealed August 20, 2002 judgment that found defendant to be a sexually oriented offender, we find the trial court did not have jurisdiction to impose a new determination of sexual predator in its September 19, 2002 amendment or its September 20, 2002 corrected judgment entry. Yee at 44. Therefore, we must conclude the trial court's September 19, 2002 amendment and its September 20, 2002 corrected judgment entry, which determined defendant to be a sexual predator, are legal nullities. See State v. Wright, Cuyahoga App. No. 81644, 2003-Ohio-1958, at ¶ 16 (finding trial court did not have jurisdiction to pronounce a new sentence after notice of appeal was filed and new sentence, which was rendered after the notice of appeal was filed, was a nullity).
 {¶ 22} Consequently, we confine our review to the trial court's August 20, 2002 judgment entry and August 20, 2002 sentencing addendum that determined defendant to be a sexually oriented offender.
 {¶ 23} At the outset, we observe that, at the sentencing hearing, defendant failed to object to the trial court's determination about his sexual offender classification; furthermore, after the sentencing hearing, defendant did not submit any post-hearing motions that objected to the trial court's sexual offender classification. Therefore, absent objection, we apply the plain error standard as applied to civil cases. As stated in Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus:
In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.
See, also, Gowdy at 398-399 (applying Goldfuss and holding that conducting a sexual offender classification hearing without notice to defendant constituted plain error).
 {¶ 24} Defendant's first assignment of error asserts application of R.C. Chapter 2950 and its accompanying registration requirements violate substantive due process and equal protection guarantees.
 {¶ 25} Here, because defendant concedes R.C. Chapter 2950 would have been applicable to defendant if defendant's acts had been motivated by a desire to sexually harm, defendant therefore does not appear to contend that R.C. Chapter 2950 is facially unconstitutional. See, e.g., defendant's brief at 10 ("[h]ad [defendant's] acts been influenced by a desire to harm the victims [sic] sexually R.C. Section 2950 would certainly apply").
 {¶ 26} However, even if defendant had facially challenged R.C. Chapter 2950 on the basis of a substantive due process violation or equal protection violation, defendant would be required to overcome a strong presumption of constitutionality. See Cook, supra, at 409, quoting State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus (" '[a]n enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible' "); State v. Coleman (1997), 124 Ohio App.3d 78, 80, dismissed, appeal not allowed (1998),81 Ohio St.3d 1497, citing United States v. Salerno (1987), 481 U.S. 739,749, 107 S.Ct. 2095 ("[a] facial challenge to a legislative act is the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid").
 {¶ 27} Moreover, because the Ohio Supreme Court has already observed that "there is nothing in R.C. Chapter 2950 that infringes upon any fundamental right of privacy or any other fundamental constitutional right that has been recognized by the United States Supreme Court[,]" State v. Williams (2000), 88 Ohio St.3d 513, 531, certiorari denied sub. nom., Suffecool v. Ohio, 531 U.S. 902, 121 S.Ct. 241, R.C. Chapter 2950 only would need to withstand a "rational basis" review. See State v. Fonseca (1995), 106 Ohio App.3d 115, 117, citing Williamson v. Lee Optical of Oklahoma, Inc. (1955), 348 U.S. 483, 75 S.Ct. 461 ("[w]here a statute under review does not affect a fundamental right, the appropriate level of scrutiny is the `rational basis' test"); TRM, Inc. v. United States (C.A. 11, 1995), 52 F.3d 941, 945 ("[s]ubstantive due process claims not involving a fundamental right are reviewed under the rational basis test").
 {¶ 28} "Rational basis" review only requires "that the regulation bear some rational relation to a legitimate state interest." Craigmiles v. Giles (C.A. 6, 2002), 312 F.3d 220, 223, citing Romer v. Evans (1996), 517 U.S. 620, 632, 116 S.Ct. 1620. See Fabrey v. McDonald Village Police Dept. (1994), 70 Ohio St.3d 351, 354, citing Martinez v. California (1980), 444 U.S. 277, 283, 100 S.Ct. 553 ("[f]ederal due process is satisfied if there is a rational relationship between a statute and its purpose"). Compare Fabrey at 354, quoting Benjamin v. Columbus (1957), 167 Ohio St. 103, 110, certiorari denied (1958), 357 U.S. 904,78 S.Ct. 1147, citing Piqua v. Zimmerlin (1880), 35 Ohio St. 507, 511
("[u]nder the Ohio Constitution, an enactment comports with due process `if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary' "). See, also, Gamble v. Escondido (C.A. 9, 1996), 104 F.3d 300, 307, quoting Munoz v. Sullivan (C.A. 9, 1991),930 F.2d 1400, 1404 (" '[T]he rational basis test is identical under the two rubrics [of equal protection and due process].'").
 {¶ 29} Here, R.C. Chapter 2950 arguably bears some rational relation to a legitimate state interest because it seeks to protect the safety and general welfare of the citizenry. See Cook at 417, quoting former R.C. 2950.02(B) and (A)(2) ("R.C. Chapter 2950, on its face, clearly is not punitive because it seeks to `protect the safety and general welfare of the people of this state,' which is a `paramount governmental interest' ").
 {¶ 30} Rather than facially challenging R.C. Chapter 2950, defendant instead contends R.C. Chapter 2950, as applied to him, is unconstitutional.
 {¶ 31} Pursuant to former R.C. 2950.01(D)(2)(a), which was in effect at the time defendant abducted Evans, a "`[s]exually oriented offense' means any of the following offenses: * * * [a] violation of section * * * 2905.02 * * * of the Revised Code when the victim of the offense is under eighteen years of age[.]" Here, defendant pled guilty to a violation of R.C. 2905.02 and, at the time of the abduction, Evans was under 18 years of age. Therefore, pursuant to former R.C. 2950.01(D)(2)(a), defendant committed a "sexually oriented offense." Consequently, pursuant to the statute in effect at the time of defendant's crime, the trial court properly could have found defendant to be a "sexually oriented offender." See State v. Hayden, 96 Ohio St.3d 211, 2002-Ohio-4169, at ¶ 9, certiorari denied (2003), ___ U.S. ___, 123 S.Ct. 1265, citing Cook at 407; Williams at 519 (explaining that, although not specifically defined in R.C. Chapter 2950, a "sexually oriented offender" is a person "`who has committed a "sexually oriented offense" as defined in R.C.2950.01[D], and does not meet the definition of either a habitual sex offender or sexual predator' ").
 {¶ 32} Furthermore, at the August 16, 2002 hearing, after previously having heard the evidence, the trial court found:
* * * [G]iven the totality of these circumstances and given the assessment that was made by the sex offender unit in the Franklin County Probation Department wherein they have taken into account the strange — the fact that this young man was not a relative of the victim, that there was an attempt to use weapons, even though it turned out to be a toy weapon, that the victim was a particularly vulnerable victim, the defendant was not in treatment for any of these behaviors, there was no empathy shown to the victim, that it was impulsive or compulsive behavior, that it involved going into a home in the middle of the night and taking somebody from the home, taking them to a different location, and there but for probably the police looking for a burglar it's conceivable that the defendant would have, in fact, molested this young person.
Also, the presence of the materials that were in his car is not a particular — I mean — is a significant factor in taking this into account.
And the court can think of absolutely no reason in the world that you would take a young person out of a house in the middle of the night and spirit them away to a different location to do something other than a sexual act.
And the fact that the defendant has indicated it was a joke that was being played on the mother is not a factor that is believable by this court. (Tr. Vol. II, 36-37.)
 {¶ 33} After reviewing the record, we find competent credible evidence to support the trial court's finding that defendant's abduction was sexual in nature. Here, the abduction occurred in the early morning after the victim was aroused from sleep; the victim was only partially clad; the victim was a minor and, therefore, particularly vulnerable; there was an attempt to use a toy weapon to threaten the victim to accompany defendant; the novel and personal ads that were recovered from defendant's vehicle contained sexual overtones; and it can be reasonably inferred these materials containing sexual overtones belonged to defendant. Consequently, using a plain error standard of review, under these facts and circumstances, defendant's contention that his abduction of Evans was not sexual in nature is not supported by the evidence or reasonable inferences construed from the evidence.
 {¶ 34} Therefore, under a plain error standard of review, because (1) the trial court reasonably could conclude defendant's abduction was sexual in nature in violation of R.C. Chapter 2950; (2) R.C. Chapter 2950 bears a rational relation to the legitimate state interest of protecting the citizenry from persons who commit sexually oriented offenses, (see, e.g., former R.C. 2950.02[A][1] to [6]); and (3) application of R.C. Chapter 2950 in this case is not unreasonable or arbitrary, we conclude the trial court's application of former R.C. 2950.01(D)(2)(a), as applied to defendant, did not violate substantive due process under federal or state constitutions.[1] But, see, State v. Reine, Montgomery App. No. 19157, 2003-Ohio-50, at ¶ 28, appeal allowed, 99 Ohio St.3d 1434,2003-Ohio-2902, and cause dismissed, 99 Ohio St.3d 1549, 2003-Ohio-4781
(finding application of sexual offender classification to defendant who kidnapped minors without sexual motivation or purpose violated state and federal Due Process clauses); State v. Barksdale, Montgomery App. No. 19294, 2003-Ohio-43, at ¶ 28, appeal allowed, 99 Ohio St.3d 1434,2003-Ohio-2902, and cause dismissed, 99 Ohio St.3d 1549, 2003-Ohio-4781
(finding application of sexual offender classification to defendant who kidnapped minors without sexual motivation or purpose violated state and federal Due Process clauses); State v. Young, Montgomery App. No. 19472, 2003-Ohio-2205, at ¶ 42, appeal dismissed, 99 Ohio St.3d 1529,2003-Ohio-4445, and appeal not allowed, 99 Ohio St.3d 1549,2003-Ohio-4781 (declining to reconsider Reine and Barksdale).
 {¶ 35} Nevertheless, because, pursuant to former R.C.2950.01(D)(2)(a), a defendant who is convicted of abducting a person under 18 years of age automatically is classified as a sexually oriented offender irrespective of whether a defendant committed an abduction with a sexual purpose, defendant contends his conviction as a sexually oriented offender violates the Equal Protection Clause of theFourteenth Amendment of the United States Constitution.
 {¶ 36} As observed in Williams, supra, at 529-530:
The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause prevents states from treating people differently under its laws on an arbitrary basis. Harper v. Virginia State Bd. of Elections (1966), 383 U.S. 663,681, 86 S.Ct. 1079, 1089, 16 L.Ed.2d 169, 181 (Harlan, J., dissenting). "Whether any such differing treatment is to be deemed arbitrary depends on whether or not it reflects an appropriate differentiating classification among those affected; the clause has never been thought to require equal treatment of all persons despite differing circumstances." Id.
See, also, Am. Assn. of Univ. Professors, Cent. State Univ. v. Cent. State Univ. (1999), 87 Ohio St.3d 55, 60 (affirming that federal and state equal protection clauses are to be construed and analyzed identically).
 {¶ 37} "Unless the legislation classification under attack involves a suspect class, the classification need only be rationally related to a legitimate government goal to survive a constitutional challenge." Cutshall v. Sundquist (C.A. 6, 1999), 193 F.3d 466, 482, certiorari denied (2000), 529 U.S. 1053, 120 S.Ct. 1554. Furthermore, "the only classifications recognized as `suspect' are those involving race, alienage, and ancestry." Williams, supra, at 530, citing Massachusetts Bd. of Retirement v. Murgia (1976), 427 U.S. 307, 312,96 S.Ct. 2562. Therefore, because the classification of sex offender does not involve race, alienage, and ancestry, sex offenders are not a suspect class, Williams at 530; Cutshall at 482, and R.C. Chapter 2950 is subject to scrutiny under a rational basis analysis. Williams at 531.
 {¶ 38} As stated in Williams:
Under the rational basis standard, we are to grant substantial deference to the predictive judgment of the General Assembly. * * * The state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, the challenger must negative every conceivable basis before an equal protection challenge will be upheld. * * * Id. at 531.
 {¶ 39} In support of his contention that his classification as a sexually oriented offender violated the constitutional guarantee of equal protection, defendant cites to State v. Washington (Nov. 14, 2001), Lake App. No. 99-L-015. Washington is factually distinguishable because (1) it arose from a domestic dispute; (2) it concerned an appellant's abduction of his infant daughter; and (3) the appellant's crime was not sexual in nature. Although, under the particular facts of that case, the Washington court determined there was no rational relationship between the legitimate governmental interest of protecting the safety and general welfare of the citizenry from sex offenders and the imposition of the sexually oriented offender label upon the appellant, the Washington court also noted that "[u]nder a proper showing, a defendant may, indeed, fit the classification of a sexually oriented offender when the abduction was committed for a sexual purpose." Id. Here, as discussed infra, we have already determined the trial court reasonably could have concluded defendant committed the abduction of Evans for a sexual purpose. Thus, defendant's reliance on Washington is inapposite.
 {¶ 40} Moreover, defendant has also failed to negative every conceivable basis in support of his equal protection challenge. See Williams at 531. For instance, the General Assembly rationally could have concluded that abduction of a minor under 18 years of age presumptively carries a high risk of sexual exploitation against the minor so that a defendant who is convicted of abduction of a minor under 18 years of age ought to be classified as a "sexually oriented offender" with registration requirements so that the public may be alerted to the presence of a sex offender and take precautionary measures. See, e.g., former R.C. 2950.02(A)(1) (declaring that if the public is provided adequate notice about persons who commit sexually oriented offenses, the public can develop constructive plans to prepare for the sex offender's release from imprisonment). See, also, Eppinger, supra, at 160 ("[a]lthough Ohio's version, R.C. Chapter 2950, does not differentiate between crimes against children and crimes against adults, recidivism among pedophile offenders is the highest. Some studies have estimated the rate of recidivism as being as high as fifty-two percent for rapists and seventy-two percent for child molesters").
 {¶ 41} Therefore, defendant's contention that his classification as a sexually oriented offender violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution is unpersuasive.
 {¶ 42} Accordingly, having found no violation of the constitutional guarantees of substantive due process or equal protection, as applied to defendant, we overrule defendant's first assignment of error.
 {¶ 43} Defendant's second assignment of error asserts the trial court's determination that defendant is a sexual predator was not supported by clear and convincing evidence. Having already determined the trial court's September 19, 2002 amendment of an August 20, 2002 sentencing addendum and the trial court's September 20, 2002 corrected judgment entry, which found defendant to be a sexual predator, are nullities, defendant's second assignment of error is moot.
 {¶ 44} Accordingly, having overruled defendant's first assignment of error and found defendant's second assignment of error to be moot, we therefore affirm the August 20, 2002 judgment entry and August 20, 2002 sentencing addendum of the Franklin County Court of Common Pleas, which found defendant to be a sexually oriented offender. Because the trial court's September 19, 2002 amendment of its August 20, 2002 sentencing addendum and the trial court's September 20, 2002 corrected judgment entry are nullities, these are therefore vacated.
Judgment affirmed; September 19, 2002 amendment of the August 20, 2002 sentencing addendum and September 20, 2002 corrected judgment entry are vacated.
WRIGHT and KLATT, JJ., concur.
WRIGHT, J., retired of the Ohio Supreme Court, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] See State v. Benson (1992), 81 Ohio App.3d 697, 700, fn. 2, citing State ex rel. Heller v. Miller (1980), 61 Ohio St.2d 6; Peebles v. Clement (1980), 63 Ohio St.2d 314 (concluding guarantee of due process under the Ohio Constitution is substantially equivalent to that under the United States Constitution).