[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] We have sua sponte consolidated the appeals numbered C-030460 and C-030461.
 DECISION.
{¶ 1} Following a bench trial, defendant-appellee Elmer Golden was convicted of two charges of criminal child enticement, in violation of R.C. 2905.05. The state appeals from the trial court's determination that R.C. Chapter 2950, the sexual-offender-classification statute, was unconstitutional as applied to Golden. In a single assignment of error, the state argues that the trial court erred in making that finding. For the reasons that follow, we reverse the judgment of the trial court and remand this case for a hearing on the constitutional application of the statute to Golden, with instructions that the state be allowed to present evidence of sexual motivation at the hearing.
 The Facts {¶ 2} The facts presented at trial were that, on January 31, 2003, the seventy-seven-year-old Golden had enticed two little girls into his car. The victims were sisters and were eight and ten years old.
 {¶ 3} At trial, Glen Eberhart testified that he was the property maintenance supervisor of Mallard Lakes Town Homes, a community consisting of 198 homes. Eberhart had seen Golden on the property over the years and knew that Golden was not a resident there. In the fall of 2002, Eberhart noticed on five or six different mornings that Golden had talked to the two victims near the victims' home, which was approximately one-half mile from the property's clubhouse.
 {¶ 4} In the last weeks of January 2003, Golden began appearing every day at about 4:00 p.m. at the property's school-bus stop, which was fifty feet from the clubhouse. As Eberhart waited at the bus stop for his daughter to get off the school bus, he would see Golden waiting for the two young victims to get off the bus. Sometimes Golden would walk home with the victims.
 {¶ 5} On the afternoon of January 30, 2003, Eberhart saw Golden walk to the victims' home with a large chunk of snow or ice. Golden spoke to the victims outside and then entered their home with them. Golden stayed in the home for about one minute before he walked back out. Eberhart was suspicious of Golden's conduct because he did not know what relationship Golden may have had with the victims' family.
 {¶ 6} On the afternoon of January 31, 2003, Eberhart saw Golden waiting in his car at the bus stop. Golden had arrived about ten minutes before the bus arrived. When the victims got off the bus, Golden got out of his car and walked over to them. Eberhart said that Golden took them by the hands and led them to his car. Golden opened the car doors so that the victims could get into his car.
 {¶ 7} At that point, Eberhart ran over to the car, knocked on the window, and began to open the back door. Eberhart told the victims that their mother had called and had said that they should meet her at the clubhouse office. Eberhart testified that when he opened the back door of Golden's car, Golden turned around to look at him. Eberhart said that Golden had a startled look on his face. The victims got out of Golden's car, and Golden drove off.
 {¶ 8} The victims' mother testified that she did not know Golden, but had seen him on the property. She said that, on one occasion, Golden had stopped her and tried to give her his telephone number, but she had refused. The mother testified that, on another occasion, Golden had come to her door and had given her some restaurant coupons for her daughters. The mother testified that she had accepted the coupons to be polite, and so that Golden would get away from her.
 {¶ 9} On January 30, 2003, the victims' mother was at home, having left work early to recover from emergency dental surgery. At about 4:15 p.m., as the mother lay on a couch, her young daughters walked in the front door of their home with Golden. The house was dark at the time because all of the window shades were drawn. The mother testified that a person's eyes would have had to adjust to the darkness in the home. She said that her daughters did not notice that she was home. Golden had looked in the mother's direction, but she did not know whether Golden had seen her.
 {¶ 10} Upon entering the home, Golden stayed in the foyer, inside the door, with the door closed behind him. The mother testified that she said nothing to Golden because she was too stunned to speak and was in considerable pain from the dental surgery. Golden left the home within one minute.
 {¶ 11} The victims' mother thought that it was strange that an elderly man would have such interest in her children. She testified that she felt very uncomfortable that a stranger wanted to be near her young daughters. The victims' mother testified that she did not consider Golden an acquaintance because she had never had "anything to do with him." She had never given Golden permission to walk her daughters to or from the bus stop, or to have her daughters in his car. Upon learning from Eberhart that Golden had had her daughters in his car, the mother called the police.
 {¶ 12} Springdale Police Detective Joseph Warren testified that, following Golden's arrest, Golden admitted that he had had the victims in his car. Golden said that he had intended to drive the victims from the bus stop to their home. Golden admitted that he had never obtained permission from the victims' parents to have them in his car. Golden told Detective Warren that, on a prior occasion, he had driven the victims to the bus stop.
 {¶ 13} Golden called the older of the two victims as a defense witness. She testified that Golden had walked her and her sister home a few times, and that he had driven them from home to the bus stop one morning.
 {¶ 14} The older victim also testified that, on one day, when Golden had met them at the bus stop, she had gotten off the bus and had given him a hug. She had then asked Golden to carry a large block of "slush" home for her and her sister, which he did. She said that she and her sister had found a pair of rusty scissors in a pile of snow, and that Golden had told them he would polish the scissors and return them to the victims.
 {¶ 15} The older victim said that Golden had put the block down and entered their home so that the victims could show him their cat. She also said that her mother was not supposed to be at home until later that night, and that she and her sister did not know that their mother would be home when they got there.
 {¶ 16} The older victim testified that, on the following day, Golden had met her and her sister at the bus stop and told them that he had brought his car. As the victims walked toward the car, the older victim noticed the pair of scissors and two magazines inside the car. She testified that one of the magazines was an L.L. Bean catalog that had Golden's name and telephone number written on it. Before she got into the car, Golden handed her the magazines and told her that if her family wanted anything from them, he could get it for them.
 {¶ 17} Golden testified that he lived about one-half mile from the victims. He said that he had gotten to know them from taking his morning walk past their house. He said that sometimes he would walk the victims from the bus stop to their home, and that, on one morning, he had driven them from near their home to the stop.
 {¶ 18} Golden testified that the victims had wanted him to carry the large, heavy block of ice to their yard, and that they had wanted him to go into their house to see their cat. He said that he had petted the cat a few times and left. Golden said he was not comfortable being in the victims' home, but that he was a cat lover, and the victims had wanted him to see the cat.
 {¶ 19} Golden said that, on the following day, he had had the polished scissors lying on the front seat of his car, so he thought he would drive over to the bus stop to give the scissors to the victims. He said that when the victims got into his car, he was about to put the key in the ignition when he heard "pecking" on the window. He turned to see a man telling the victims that their parents wanted them to wait in the office. When the victims got out of the car, Golden left.
 {¶ 20} Golden admitted that the victims' mother had not given him permission to take the victims in his car.
 Criminal Child Enticement {¶ 21} Under the criminal child-enticement statute, "No person, by any means and without privilege to do so, shall knowingly solicit, coax, entice, or lure any child under fourteen years of age to accompany the person in any manner, including entering into any vehicle as defined in section 4501.01 of the Revised Code, whether or not the offender knows the age of the child, if both of the following apply:
 {¶ 22} "(1) The actor does not have the express or implied permission of the parent, guardian, or other legal custodian of the child in undertaking the activity;
 {¶ 23} "(2) The actor is not a law enforcement officer, medic, firefighter, or other person who regularly provides emergency services, and is not an employee or agent of, or a volunteer acting under the direction of, any board of education, or the actor is any of such persons, but, at the time the actor undertakes the activity, the actor is not acting within the scope of the actor's lawful duties in that capacity."
 Golden's Sexually-Oriented-Offender Classification {¶ 24} Sexual motivation is not an element of the offense of criminal child enticement.[2] But under former R.C.2950.01(D), in effect at the time of Golden's convictions, any violation of the criminal child-enticement statute in which the victim of the offense was under eighteen years old was defined as a "sexually oriented offense."[3] We note that the statute has since been amended to include criminal child enticement as a sexually-oriented offense only if the offense is committed with a sexual motivation.[4]
 {¶ 25} The Supreme Court of Ohio has held, "The Due Process Clauses of the Fourteenth Amendment to the United States Constitution and of Section 16, Article I of the Ohio Constitution do not require a trial court to conduct a hearing to determine whether a defendant is a sexually oriented offender. Instead, according to R.C. Chapter 2950, if a defendant has been convicted of a sexually oriented offense as defined in R.C.2950.01(D), and is neither a habitual sex offender nor a sexual predator, the sexually oriented offender designation attaches as a matter of law."[5]
 {¶ 26} The supreme court also has held that R.C. Chapter 2950 is constitutional on its face, but it has held open the possibility that R.C. Chapter 2950 might be misapplied on an individual basis.[6] The legislative purpose behind R.C. Chapter 2950 is to protect the public from sex offenders by providing the public with adequate notice and information about the offenders.[7] But the statute's purpose may not be served, as applied to an individual offender, by its automatic labeling of an offender as a sexually-oriented offender where the "sexually oriented offense" requires no proof of sexual purpose or motivation.[8] Accordingly, while a defendant is not constitutionally entitled to a classification hearing to determine whether he is a sexually-oriented offender, the defendant may challenge the statute's constitutionality as applied to him where the underlying "sexually oriented offense" is not sexually motivated.
 {¶ 27} Indeed, some Ohio courts have held that the application of R.C. Chapter 2950's requirement that an individual be classified as a sexually-oriented offender, where the offenses are committed without sexual motivation, is unreasonable and arbitrary, and bears no rational relationship to the statute's purpose.[9] We note, however, that, in the majority of those cases, the state stipulated or conceded that the offenses had not been committed with any sexual motivation.[10] At least one Ohio court has held the statute's sexually-oriented-offender designation is constitutional as applied to a defendant where the record contains evidence that the offense was sexual in nature.[11]
 Evidence of Golden's Sexual Motivation
 {¶ 28} In this case, Golden argues that the state failed to present evidence of his sexual motivation. But, in its prosecution for criminal child enticement, the state was not required to prove that Golden had committed the offenses with a sexual motivation, and such evidence may have been prejudicial to Golden and irrelevant to the court's determination of Golden's guilt.[12] Clearly, however, at the hearing on Golden's motion challenging the constitutionality of R.C. Chapter 2950's designation of him as a sexually-oriented offender, the state was entitled to present evidence of sexual motivation.[13] In this case, the state requested a hearing to allow it to present such evidence, but the court denied the request.
 {¶ 29} The state proffered evidence that Golden had told the young victims that other little girls, including a girl whom they knew, would go to his house alone and that it was alright. A police detective had interviewed the other girls and confirmed that they had been in Golden's house alone on several occasions, and that they had gone on walks with him without their mothers' knowledge. Golden had given gifts to the girls and had taken photographs of them.
 {¶ 30} The state further proffered evidence that, on February 3, 2003, just days after the incidents for which he was arrested, a police officer saw Golden at the victims' bus stop and reported that Golden had quickly left on foot when a police car approached. Golden returned in his car shortly thereafter. Two days later, the criminal child-enticement charges were filed.
 {¶ 31} The state proffered evidence that Golden had been seen on January 29, 2003, knocking on the rear door of a residence and then getting back into his car. When a twelve-year-old boy in the home answered the door, the boy saw Golden in his car. Golden looked at him, smiled, and then drove away. The following day, Golden approached the boy's ten-year-old sister at a school-bus stop and told her that she was pretty. The boy and his sister had seen Golden walking near their home numerous times during the two-week period prior to the instant offenses.
 {¶ 32} The state also proffered evidence of materials found during the execution of a search warrant at Golden's home. These materials included numerous adult magazines, as well as pornographic catalogs and videotapes. Photographs of children were discovered among the sexually-oriented materials. Police also found numerous photographs of young women, appearing to be between eighteen and twenty years old, in various states of undress. Furthermore, Golden had a bed set up in the rear of his van, as well as a bed in the storage area of his garage. Officers found Viagra tablets, a penile pump, and a penile injection kit.
 {¶ 33} In 1997, Golden had been convicted of soliciting. Golden had offered a nineteen-year-old girl a ride on his motorcycle, had offered her alcohol and money, and had taken photographs of her. Golden had offered to give the girl more money if she would perform oral sex on him.
 {¶ 34} The state further proffered the report of the court clinic, as well as evidence that a clinical psychologist had administered a test to Golden that had resulted in a score indicating that Golden had a "medium-high" risk of committing another sexually-oriented offense. The state proffered both the test results and the psychologist's explanation of the results.
 {¶ 35} While the evidence proffered by the state may have been sufficient to support a determination that Golden had committed the criminal child-enticement offenses with a sexual motivation, the trial court precluded the state from offering the evidence at the hearing on Golden's motion. The trial court's exclusion of the evidence improperly prevented the state from demonstrating the constitutionality of the sexual classification as applied to Golden.[14]
 {¶ 36} Therefore, we hold that where the state was not given an opportunity to present evidence of sexual motivation, the trial court erred in holding that R.C. Chapter 2950 was unconstitutional as applied to Golden. Accordingly, we sustain the assignment of error. We reverse the judgment of the trial court and remand this case for a hearing on the constitutionality of the sexually-oriented-offender classification as applied to Golden, with instructions that the court allow the state to present evidence that Golden committed his crimes with a sexual motivation.
Judgment reversed and cause remanded.
Sundermann, J., concurs.
Gorman, J., concurs separately.
[2] See R.C. 2905.05.
[3] Former R.C. 2950.01(D)(1)(b)(i).
[4] See R.C. 2950.01(D)(1)(b)(vi).
[5] State v. Hayden, 96 Ohio St.3d 211, 2002-Ohio-4169,773 N.E.2d 502, paragraph two of the syllabus.
[6] See State v. Williams, 88 Ohio St.3d 513, 534,2000-Ohio-428, 728 N.E.2d 342.
[7] See R.C. 2950.02; see, also, State v. Cook,83 Ohio St.3d 404, 416-417, 1998-Ohio-291, 700 N.E.2d 570.
[8] See State v. Washington, 11th Dist. No. 99-L-015, 2001-Ohio-8905; State v. Barksdale, 2nd Dist. No. 19294, 2003-Ohio-43; State v. Reine, 2nd Dist. No. 19157, 2003-Ohio-50; State v. Bowman, 10th Dist. No. 02AP-1025, 2003-Ohio-5341; see, also, State v. Young, 2nd Dist. Nos. 19472 and 19473, 2003-Ohio-2205.
[9] See Washington, supra; Barksdale, supra; Reine,
supra; see, also, Young, supra.
[10] See Washington, supra; Barksdale, supra; Reine,
supra.
[11] See State v. Bowman, supra.
[12] See Reynoldsburg v. Johnson (1992), 78 Ohio App.3d 641,605 N.E.2d 996.
[13] See Williams, supra.
[14] See Williams, supra.