[Cite as *State v. Phipps*, 2016-Ohio-663.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-524 |
| v. | : | (C.P.C. No. 12CR-6254) |
| Sharvess M. Phipps, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 23, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee. **Argued:** *Barbara A. Farnbacher*.

**On brief:** *Yeura R. Venters*, Public Defender, and *Emily L. Huddleston*, for appellant. **Argued:** *George Schumann*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Sharvess M. Phipps, appeals the judgment of the Franklin County Court of Common Pleas resentencing him following remand. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} The facts and procedural history of this case are more fully detailed in this court's prior decision on appellant's direct appeal, *State v. Phipps*, 10th Dist. No. 13AP-640, 2014-Ohio-2905 ("*Phipps I*"), and our decision on appellant's appeal of the denial of his petition for postconviction relief, *State v. Phipps*, 10th Dist. No. 14AP-545, 2015-Ohio-3042 ("*Phipps II*").

{¶ 3} As relevant here, on December 12, 2012, appellant was indicted on 41 felony charges arising from a series of robberies, burglaries, and home invasions in May and June 2012. Appellant entered a plea of guilty to 21 counts of the indictment. On

January 25, 2013, the trial court sentenced appellant to an aggregate prison term of 172 years and 11 months. On June 14, 2013, the trial court conducted a resentencing hearing, sentencing appellant to an aggregate prison term of 150 years. The trial court filed a corrected judgment entry following the resentencing hearing on June 28, 2013.

{¶ 4} On July 23, 2013, appellant filed a direct appeal from the June 28, 2013 judgment entry. On June 30, 2014, this court rendered a decision on appellant's direct appeal, affirming in part and reversing in part. *Phipps I* at ¶ 74. In that decision, we found that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences. *Id.* at ¶ 57. Accordingly, we remanded for the trial court to "consider whether consecutive sentences [were] appropriate pursuant to R.C. 2929.14(C)(4) and, if so, to enter the proper findings on the record." *Id.* Additionally, regarding whether appellant's convictions for aggravated robbery and kidnapping were subject to merger, we found that "the record on appeal is not developed sufficiently to determine whether the offenses were committed by the same conduct" and concluded that the matter must be remanded for the trial court to determine whether appellant's offenses should merge. *Id.* at ¶ 66.

{¶ 5} On April 7, 2014, during the pendency of his direct appeal, appellant filed a petition for postconviction relief pursuant to R.C. 2953.21. On June 23, 2014, the trial court denied the petition. On July 14, 2014, appellant filed a notice of appeal from the denial of his petition for postconviction relief.

{¶ 6} On July 2, 2014, the trial court filed an entry scheduling appellant's resentencing hearing for September 16, 2014 pursuant to this court's decision in *Phipps I.* On August 14, 2014, appellant filed a motion to vacate the resentencing hearing, asserting that the trial court lacked jurisdiction during the pendency of appellant's appeal of this court's decision in *Phipps I* to the Supreme Court of Ohio. On September 2, 2014, the trial court granted appellant's motion to vacate the September 16, 2014 resentencing hearing, and scheduled the resentencing hearing for January 28, 2015. On January 16, 2015, the trial court rescheduled appellant's resentencing hearing for April 22, 2015. On April 10, 2015, appellant filed a motion to vacate the April 22, 2015 resentencing hearing, asserting that the trial court lacked jurisdiction during the pendency of appellant's postconviction appeal to this court. On April 15, 2015, the trial court denied appellant's motion to vacate the resentencing hearing.

{¶ 7} On April 15, 2015, appellant filed a motion to withdraw his guilty plea pursuant to Crim.R. 32.1. On April 16, 2015, plaintiff-appellee, State of Ohio, filed a memorandum contra. On April 21, 2015, appellant filed a sentencing memorandum.

{¶ 8} On April 22, 2015, the trial court held a resentencing hearing, sentencing appellant to an aggregate prison term of 150 years. On April 23, 2015, the trial court filed a resentencing judgment entry. On April 27, 2015, the trial court filed a corrected resentencing judgment entry. On April 30, 2015, the trial court filed two additional sentencing entries which appear to contain mere typographical corrections.

## II. Assignments of Error

{¶ 9} Appellant appeals assigning the following three errors for our review:

> 1. The trial court erred by failing to merge Mr. Phipps' convictions at sentencing in violation of R.C. 2941.25(A), the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.
>
> 2. The trial court erred by resentencing Mr. Phipps because it lacked jurisdiction to do so because the same matter was pending before the Tenth District Court of Appeals for review.
>
> 3. The trial court erred by failing to consider Mr. Phipps' youth when imposing a life sentence.

For ease of discussion, we address the assignments of error out of order.

### A. Second Assignment of Error—Jurisdiction

{¶ 10} We first consider appellant's second assignment of error as it raises a jurisdictional question. Specifically, appellant asserts that the trial court lacked jurisdiction to resentence him during the pendency of his appeal from the trial court's denial of his petition for postconviction relief.

{¶ 11} Generally, " 'trial courts lack authority to reconsider their own valid final judgments in criminal cases.' " *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, ¶ 18, quoting *State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 338 (1997). *See State v. Bowman*, 10th Dist. No. 02AP-1025, 2003-Ohio-5341, ¶ 20. The Supreme Court has " 'consistently held that once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.' " *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, ¶ 17, quoting *State ex rel. Rock v. School Emp. Retirement Bd.*,

96 Ohio St.3d 206, 2002-Ohio-3957, ¶ 8; *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 95 (1978).

{¶ 12} "The postconviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment." *State v. Ibrahim*, 10th Dist. No. 14AP-355, 2014-Ohio-5307, ¶ 8, citing *State v. Davis*, 10th Dist. No. 13AP-98, 2014-Ohio-90, ¶ 17, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). "Postconviction relief is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction." *Ibrahim* at ¶ 8. "Postconviction review is not a constitutional right but, rather, is a narrow remedy which affords a petitioner no rights beyond those granted by statute." *Id.*, citing *Calhoun* at 281-82. "A postconviction relief petition does not provide a petitioner a second opportunity to litigate his or her conviction." *Id.* at ¶ 8.

{¶ 13} Here, because the postconviction relief process is a collateral civil proceeding, it is not a matter inconsistent with the trial court's jurisdiction over a criminal conviction and sentence. "Trial courts routinely consider petitions for postconviction relief even while an appeal from the conviction is pending either in the court of appeals or in this court." *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 15. Indeed, in this case, the trial court considered and rendered judgment on appellant's petition for postconviction relief which was filed during the pendency of appellant's direct appeal of his conviction and sentence.

{¶ 14} Appellant points to *Bowman, State v. Hunt*, 10th Dist. No. 04AP-1177, 2005-Ohio-3144, and *Special Prosecutors* in support of his position that the trial court was divested of jurisdiction to resentence him during the pendency of his appeal from the denial of the petition for postconviction relief. However, we find those cases inapplicable to the present matter. In both *Bowman* and *Hunt*, the trial court filed amended judgment entries while the direct appeal of the defendant's conviction was pending before the court of appeals. *Bowman* at ¶ 14-15, 21; *Hunt* at ¶ 4, 11. However, here, only appellant's appeal from the denial of his petition for postconviction relief was pending before this court, as we had already remanded appellant's direct appeal of his conviction and sentence to the trial court for resentencing. In *Special Prosecutors*, the Supreme Court found that the trial court lacked jurisdiction to entertain a motion to withdraw a guilty plea after the direct appeal had been perfected. *Id.* at 97-98. However, unlike a motion to

withdraw a guilty plea, a trial court retains jurisdiction to consider a motion for postconviction relief during the pendency of a direct appeal. R.C. 2953.21(C) ("The court shall consider a petition * * * even if a direct appeal of the judgment is pending."); *Morgan* at ¶ 15. Thus, the rule articulated in *Special Prosecutors* is inapplicable here when considering a trial court's jurisdiction over resentencing during the pendency of an appeal from the denial of a petition for postconviction relief.

{¶ 15} Therefore, we find that the trial court was not divested of jurisdiction to resentence appellant following the notice of appeal from the denial of his petition for postconviction relief. Accordingly, we overrule appellant's second assignment of error.

**B. First Assignment of Error—Merger**

{¶ 16} In his first assignment of error, appellant asserts that the trial court erred by failing to merge his convictions for aggravated robbery and kidnapping. Appellant argues that the facts of this case demonstrate that (1) there was no separate, identifiable harm, (2) there was no separate animus, and (3) the offenses were committed simultaneously in conjunction with one another. Thus, appellant contends that the convictions merge pursuant to *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, which clarified the analysis of allied offenses articulated in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314.

{¶ 17} R.C. 2941.25(A), Ohio's allied-offenses statute, provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." The Supreme Court has held that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 26. In determining whether offenses are allied offenses within the meaning of R.C. 2941.25(A), a court must consider the offender's conduct through the following questions: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *Id.* at ¶ 31. Separate convictions are permissible should the court, considering the conduct, animus, and import, answer in the affirmative as to any of those questions. *Id.*

{¶ 18} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. Because this test is inherently fact-dependent, it is recognized that " 'this analysis * * * may result in varying

results for the same set of offenses in different cases.' " *Id.* at ¶ 32, quoting *Johnson* at ¶ 52.

{¶ 19} Pursuant to the allied-offenses statute, where it is determined that the defendant has been found guilty of allied offenses, "the trial court must accept the state's choice among allied offenses, 'merge the crimes *into a single conviction for sentencing*, and impose a sentence that is appropriate for the merged offense.' " (Emphasis sic.) *State v. Bayer*, 10th Dist. No. 11AP-733, 2012-Ohio-5469, ¶ 21, quoting *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶ 13. We review de novo a trial court's ruling as to whether convictions merge under the allied-offenses doctrine. *State v. Corker*, 10th Dist. No. 13AP-264, 2013-Ohio-5446, ¶ 28, citing *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 47.

{¶ 20} A conviction for aggravated robbery, as defined in R.C. 2911.01(A)(1), requires proof that an offender displayed, brandished, or used a deadly weapon in order to facilitate a theft offense. *Corker* at ¶ 29. Pursuant to R.C. 2905.01, kidnapping requires proof that an offender by force, threat, or deception restrained another of his or her liberty or removed another from the place where he or she was found. *Id.*

{¶ 21} The Supreme Court has recognized that the commission of aggravated robbery necessarily involves restraint of the victim. *Corker* at ¶ 29, citing *State v. Jenkins*, 15 Ohio St.3d 164, 198 (1984), fn. 29; *see also State v. Broomfield*, 10th Dist. No. 12AP-469, 2013-Ohio-1676, ¶ 14; *State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397, ¶ 87. However, this court has found that aggravated robbery and kidnapping are not allied offenses of similar import where the restraint of the victim extends beyond the time required to commit the aggravated robbery. *Corker* at ¶ 30, citing *State v. Logan*, 60 Ohio St.2d 126 (1979), syllabus.

{¶ 22} In *Noor*, we surveyed recent cases from this court analyzing merger of kidnapping and aggravated robbery offenses.[1] In the earliest case, *State v. Davis*, 10th Dist. No. 09AP-869, 2011-Ohio-1023, we held that kidnapping did not merge with aggravated robbery because the facts demonstrated a separate animus for the charges. *Id.* at ¶ 23. In that case, the victims were held at gunpoint while the robbers demanded money and then were bound and driven around for several hours while the defendant continued to demand money. *Id.* at ¶ 15.

---

[1] We note that these decisions were issued prior to *Ruff*. Nevertheless, we find that the factual and legal analysis involved in these decisions to be instructive in performing the analysis prescribed in *Ruff*.

{¶ 23} In *State v. Sidibeh*, 192 Ohio App.3d 256, 2011-Ohio-712 (10th Dist.), the defendant restrained the liberty of the occupants of a home while others rummaged through the house. The facts in that case revealed that the restraint lasted no longer than necessary to complete the aggravated robbery. Although the victims were moved to the common area of the home, we found that movement of the victims was not so substantial as to indicate significance independent of committing the aggravated robbery. As a result, we held that the kidnapping and aggravated robbery offenses merged. *Id.* at ¶ 61.

{¶ 24} In *State v. Vance*, 10th Dist. No. 11AP-755, 2012-Ohio-2594, we held that kidnapping and aggravated robbery offenses did not merge because the kidnapping was prolonged and involved transporting the victim over a considerable distance. *Id.* at ¶ 16. In that case, the defendant entered the victim's vehicle, held her captive at gunpoint, demanded money, drove her to an ATM where he withdrew money from her account, drove her to a drug house where he ordered her to remain in the van, and then returned and drove her to another location, where he exited the car and told her to drive away. In total, the incident lasted approximately one hour and fifteen minutes.

{¶ 25} In *Broomfield*, we held that the offenses of robbery and kidnapping were not subject to merger because the movement of victims during the course of a robbery had significance independent of the robbery. *Id.* at ¶ 19. We noted that the kidnapping exposed the victim to an increased risk of substantial harm and that one victim was moved to a separate bedroom location within the house before the defendant sexually assaulted the victim. Further, we found that the restraint "appear[ed] to have lasted longer than necessary to complete the robbery." *Id.*

{¶ 26} In *Noor*, the defendants held 11 victims at gunpoint in a residence, demanding money and property from the occupants. *Id.* at ¶ 3. The victims were threatened, assaulted, and restrained of their liberty for approximately 20 to 40 minutes until the victims overcame the robbers, terminating the robbery. Finding the facts to be analogous to those in *Sidibeh* and considering our holding in *Broomfield*, we concluded that the aggravated robbery offenses merged with the kidnapping offenses. *Noor* at ¶ 95.

{¶ 27} Here, in *Phipps I*, we found that merger of the offenses was not discussed at the sentencing hearings, and the record did not reflect that the trial court considered or applied the merger analysis required by R.C. 2941.25(A). In our decision, we noted that "the prosecutor's summary statement at the plea hearing contains the only factual

background regarding the incident."  *Id.* at ¶ 66.  We provided the factual summary as follows:

> [O]n June 20, 2012, appellant and [his accomplice], wearing black ski masks and gloves, entered a residence. They held one victim at gunpoint, got the second victim out of bed at gunpoint, and led both victims around the house looking for items of value. The two eventually took watches, a laptop, some iPods, and jewelry.

*Id.* at ¶ 31.  We found that "limited facts as recited by the prosecutor raise an issue as to whether the offenses are subject to merger," but concluded that "the record on appeal [was] not developed sufficiently" for us to conclusively determine the issue.  *Id.* at ¶ 66.

{¶ 28} At the resentencing hearing on April 22, 2015, the state offered the following factual summary:

> [Assistant Prosecuting Attorney]: [O]n June 20, 2012 at 1:20 p.m., [the] victims * * * reported a robbery. [The victims] were inside their residence [when] [t]wo male blacks, one wearing a black ski mask, gloves, and all black clothing and the other wearing a black bandanna over his face with black gloves entered through an unlocked front door.
>
> Both suspects displayed pistols and the first suspect demanded money from [one victim] at gunpoint and asked if there was anyone else in the house. [The victim] stated his grandmother was in the bedroom, and the second suspect proceeded to the bedroom and ordered her out at gunpoint. The second suspect held both victims at gunpoint and the first suspect began ransacking their residence, putting property into a black duffel bag and a blue drawstring backpack.
>
> The suspects stole a total of five watches, one being a Mark Ecko watch with the original box, a Toshiba laptop, another laptop computer, two Apple Ipods, a residential telephone, and jewelry.
>
> During the robbery one suspect told [one victim] that he has 17 hollow points in his gun. [The victim] stated that the suspects fled out the front door southbound * * *.

(Apr. 22, 2015 Tr. 12-13.)

{¶ 29} Based on the factual recitation provided by the state at the resentencing hearing, we find that the offenses of aggravated robbery and kidnapping are allied offenses of similar import subject to merger.  Under the framework provided by *Ruff*, we first consider whether the offenses were dissimilar in import or significance.  We find the

facts in this case to be more akin to those of *Sidibeh*, in which the movement of the victims to a common area of the house did not demonstrate significance independent of the robbery. *See also Noor* at ¶ 95. Therefore, based on the limited facts in the record, we cannot find that the harm resulting from each offense is separate and identifiable, and thus not dissimilar in import. *Ruff* at ¶ 23.

{¶ 30} Next, we consider whether the conduct demonstrates that the offenses were committed separately. The state claims in its brief that the victims were "held at gunpoint for a prolonged period of time." (Appellee's Brief, 18.) However, the record is silent as to the amount of time the kidnapping and robbery lasted. Further, unlike in *Vance*, in which the kidnapping involved conduct beyond being merely incident to the commission of the robbery, the factual record in this case reflects that the kidnapping was limited to the restraint of the victims necessary to commit the offense of aggravated robbery. *See also Corker* at ¶ 29, 31. Therefore, in the absence of additional facts, we find that the kidnapping and robbery were not committed separately.

{¶ 31} Finally, we consider whether the offenses were committed with separate animus or motivation. Nothing in the record demonstrates that the kidnapping was committed with any separate animus or motivation from the completion of the robbery. The state cites to *State v. Merryman*, 4th Dist. No. 12CA28, 2013-Ohio-4810, ¶ 52, in support of its claim that the confinement of the victims was "secretive, as they were not able to leave their home." (Appellee's Brief, 22.) In *Merryman*, the court considered whether the offenses of rape and kidnapping were subject to merger. The court found that the defendant's conduct in moving the victim from the hallway to the bathroom demonstrated a desire to avoid detection, and therefore the offense of kidnapping was committed with a separate motive from that of the offense of rape. *Id.* at ¶ 52. However, unlike in *Merryman*, nothing in the record of this case demonstrates that the movement of the victims within the residence was performed out of a desire to create secrecy. Therefore, we find *Merryman* inapposite to this matter. Further, unlike in *Davis* in which the prolonged restraint of the victim demonstrated animus separate from that of the robbery, as previously mentioned, the limited record before us does not reflect any evidence of prolonged restraint of the victims.

{¶ 32} Therefore, based on the facts and circumstances in the record and considering the holdings in *Ruff* and other applicable precedent, we find that the

aggravated robbery offenses merge with the kidnapping offenses.  Accordingly, we sustain appellant's first assignment of error.

### C. Third Assignment of Error—Appellant's Youth

{¶ 33} In his third assignment of error, appellant contends the trial court erred by failing to consider his youth as a relevant factor under R.C. 2929.12.  In support of his argument, appellant points to recent decisions of the United States Supreme Court which have noted the lesser culpability of juvenile offenders due to developmental differences between juveniles and adults.  *See, e.g., Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455 (2012); *Graham v. Florida*, 560 U.S. 48 (2010); *Roper v. Simmons*, 543 U.S. 551 (2005).

{¶ 34} In *Roper*, the court found that the Eighth and Fourteenth Amendments to the U.S. Constitution "forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed."  *Id.* at 578.  In *Graham*, the court found that "[b]ecause '[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood,' those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime."  *Id.* at 74-75, quoting *Roper* at 574.  In *Miller*, the court extended this line of reasoning to crimes including homicide to hold that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' "  *Id.* at 2460.

{¶ 35} Here, appellant, who was 19 years old at the time of the offenses in question, argues that his relative youth should have been taken into consideration during sentencing because "he lacked * * * maturity and had an underdeveloped sense of responsibility." (Appellant's Brief, 17.)  Appellant provided the trial court with such arguments in a sentencing memo supported in part by the affidavit of Antoinette Kavanaugh, Ph.D.  In her affidavit, Dr. Kavanaugh provided a "brief review of literature describing the course of brain development and psychosocial maturity during adolescence/emerging adulthood," in which she "highlight[ed] findings as they pertain to those 18 years of age or over."  (Sentencing Memo, exhibit H, 1.)

{¶ 36} At the sentencing hearing, while discussing the contents of the sentencing memo with the trial court, counsel for appellant asked the court to "extend *Graham*, *Miller*, and *Roper* of the United States Supreme Court to [appellant]." (Apr. 22, 2015 Tr. 41.)  After considering the arguments, the trial court refused to extend the holdings in

those cases to appellant, finding that there was no legal authority to support such an extension.

{¶ 37} We are unaware of, and appellant fails to point to, any pertinent legal authority to support the extension of *Roper*, *Graham*, and *Miller* to persons who were not juveniles at the time of the commission of the offense.  Indeed, in *Roper*, *Graham*, and *Miller*, the United States Supreme Court explicitly referred to the age of 18 as the divide between juveniles and adults when considering developmental differences under the Eighth Amendment.  *Roper* at 578-79; *Graham* at 82; *Miller* at 2460.  The United States Supreme Court explained its use of the age of 18 to establish the divide as follows:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. * * * The age of 18 is the point where society draws the line for many purposes between childhood and adulthood.

*Roper* at 574.

{¶ 38} Following *Miller*, the Sixth Circuit considered whether to extend *Miller* to persons over the age of 18.  *United States v. Marshall*, 736 F.3d 492 (6th Cir.2013).  The court found that "[c]onsiderations of efficiency and certainty require a bright line separating adults from juveniles" and that "[f]or purposes of the Eighth Amendment, an individual's eighteenth birthday marks that bright line."  *Id.* at 500.  In Ohio, the Seventh District recently concluded that "*Roper*, *Graham* and *Miller* are inapplicable" to a defendant who was not a juvenile at the time of the commission of the offense because the protections at issue in those cases "apply only to juvenile offenders."  *State v. Rolland*, 7th Dist. No. 12 MA 68, 2013-Ohio-2950, ¶ 15.

{¶ 39} Here, appellant offers no persuasive justification for the extension of the reasoning articulated in *Roper*, *Graham*, and *Miller* under the facts of this case.  Further, unlike in *Marshall*, in which the defendant presented testimony from experts who had personally examined him, appellant provides no relevant expert testimony specific to his developmental status.

{¶ 40} In conclusion, on the facts of this case, we cannot agree that the trial court erred by refusing to consider appellant's age through extension of the holdings in *Roper*,

*Graham*, and *Miller* in the determination of his sentence. Accordingly, we overrule appellant's third assignment of error.

## III. Disposition

{¶ 41} Having sustained appellant's first assignment of error and overruled appellant's second and third assignments of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas. We therefore remand this case to that court for further proceedings, consistent with this decision and law, regarding the merger of the aggravated robbery and kidnapping offenses.

*Judgment affirmed in part,*
*reversed in part, and cause remanded.*

TYACK and BROWN, JJ., concur.

————————————